## GREGG v. GRANBY MINING AND SMELTING COMPANY; NELSON et al., Appellants.

### Division Two, November 12, 1901.

1. **Corporations: STOCKHOLDER'S VOTE.** The *share* of the stockholder is made the unit for the election of directors of corporations by the Missouri statute, and not the person regardless of the number of his shares. The stockholder is entitled to a voice in the control of the affairs of a corporation in proportion to the number of shares owned by him.

2. ——: **STOCKHOLDER'S CUMULATIVE VOTE: SPECIAL CHARTER: NEW CONSTITUTION: VESTED RIGHT: GENERAL STATUTE.** A stockholder of a corporation created in 1864, may at any time since the adoption of the Constitution of 1875, cumulate his vote for directors, whether or

not the charter gave or withheld such right, since by the general law in force after 1845, the State reserved the right to alter, suspend or repeal any charter of any corporation, and hence, the constitutional amendment giving such right, was not violative of the vested rights guaranteed by the Federal Constitution.

3. ———: ———: ———: ———: CASE STATED. A special charter granted by the Legislature in 1864 provided, in reference to the election of directors, that "each shareholder shall be entitled to one vote on each share of stock," but nothing was said concerning the stockholder's right to cumulate his vote. By the Constitution of 1875, "in all elections for directors......each shareholder shall have the right to cast as many votes in the aggregate as shall equal the number of shares so held by him, multiplied by the number of directors to be elected......and each shareholder may cast the whole number of votes......for one candidate, or distribute such votes among two or more candidates." *Held*, that, so long as the company did not attempt to amend its charter and engage in a new business, this constitutional amendment affected its vested rights and was void if it was a corporation theretofore created, unless at the time of its creation it was expressed either in its special charter or. by a general statute that the charter was subject to be altered at legislative will. *Held*, also, that, as by the general statute of 1845 (R. S. 1845, sec. 7, ch. 34, p. 232), "the charter of every corporation shall hereafter be subject to alteration, suspension or repeal, in the discretion of the Legislature," this constitutional enabling provision applied to the special charter granted in 1864, and hence, did not impair vested rights, and as a result of it, its stockholders can now cumulate the vote of their shares and cast them all for one person as director, and if by so doing such director receive more votes above a majority than some other candidate, he is elected, and the courts will oust his competitor, and restrain him and the company from interfering with his rights as a director.

4. ———: ———: ———: ———: AMENDMENTS OF CHARTER AND ENLARGEMENT OF BUSINESS. A company organized under a special charter prior to the adoption of the Constitution of 1875, amended its charter so as to enable it to engage in business not previously permitted, under a statute which permitted such amendment only on condition that it should be "subject to the provisions and liabilities. thereof," one of which was that the election of directors should be by the cumulative plan. *Held*, that by accepting the new grant, it assumed the new burdens imposed by the statute, and could not deny to the stockholder the right to cumulate his votes; *and* this holding does not impair any vested right of the company.

Appeal from St. Louis City Circuit Court.—*Hon. L. B. Valliant*, Judge.

AFFIRMED.

*Hiram J. Grover* and *Brown & Dolman* for appellants.

(1) The charter of a corporation formed under a general law, does not consist of the articles of association alone, but of such articles taken in connection with the law under which the organization takes place. "The provisions of the law enter into and form a part of the charter." People ex rel. v. Chicago Gas Trust Co., 130 Ill. 285; Morawetz on Private Corporations, sec. 318. And in case of contracts between natural persons, the same rule applies—"that the law is to be deemed a part of every contract; that is ordinarily, the law as it exists at the time and place of the making." Bishop on Contracts, (Enlarged Ed.), sec. 439; Brine v. Insurance Co., 96 U. S. 634; Trust Co. v. Krumseig, 172 U. S. 360; Van Schoonhoven v. Curley, 86 N. Y. 192; Chouteau v. Railroad, 122 Mo. 375; Rogers v. Allen, 47 N. H. 529; Banks v. De Witt, 42 Ohio St. 263. In this case, then, it was expressly agreed between the incorporators themselves, in the very instrument by which they associated themselves together for the formation of this corporation, that in the election of directors for the management of their property and business, "each stockholder shall be entitled to one vote on each share of stock." The charter also constituted a contract between the State and the corporators. Railroad v. Reid, 13 Wall. 266; Delaware Railroad Tax, 18 Wall. 225; State Bank of Ohio v. Knopp, 16 How. 380; Zabriskie v. Railroad, 18 N. J. Eq. 178; Stevens v. Railroad, 29 Vt. 545; Railroad v. Casey, 26 Pa. St. 287. (2) "There is a marked distinction between a law

which impairs the obligation of a contract, and one which is retrospective in its operations." Leete v. Bank, 115 Mo. 199; State to use v. Greer, 78 Mo. 188. If the former class included the latter, then the addition of the latter to section 15 of article 2 of the Constitution would have been a vain and meaningless addition. Leete v. Bank, supra; Cooley's Const. Lim. (4 Ed.), 461; Justice STORY in Society v. Wheeler, 2 Gall. 105. In this case the constitutional provision under discussion is sought by the appellee to be so construed as to reach back and give to the articles of association of these corporators a different legal effect from that which they had under the law in force April 5, 1865, the date of their execution, and to disable the majority of the stockholders from electing the entire board of directors as they were expressly permitted to do under the statute in force at the time of their organization, which would be giving the provision a retrospective operation within the meaning of both the above definitions, which this court has held to be the law in this State. "Their (the stockholders ) right to participate in the election of directors in the mode prescribed by the charter, can not be interfered with, either by a constitution or legislative enactment on any such plea as that their interests will be better secured or promoted by the change. The right to manage and dispose of property is a property-right of substantial value." State ex rel. v. Greer, supra, 192; Hayes v. Commonwealth, 82 Pa. St. 518. It is sought, then, by the provision in question to destroy a property right by reaching back and giving to the transactions out of which it rose a different legal effect from that which it had under the law when it took place, and the question arises whether such an intention has been expressed in the Constitution. The same rules apply to the interpretation of constitutions in this respect as to statutes. Cooley on Constitutional Limitations (4 Ed.), 76; State ex rel. v. Greer, 78 Mo. 188; Scotland

County v. Railroad, 65 Mo. 123; State v. Grant, 79 Mo. 119. The section of the Constitution of 1875 now under consideration uses, it is true, the words "any incorporated company," which is broad enough to cover all corporations, but it is not enough that general language is used broad enough to include past transactions as well as future. Sedgwick on Statutory and Constitutional Law, 161; State v. Grant, 79 Mo. 118; Seamans v. Carter, 15 Wis. 548; Finney v. Ackerman, 21 Wis. 268; State ex rel. v. Greer, supra, 190; Leete v. Bank, 115 Mo. 196. Statutes are frequently drawn in such a manner, yet such general language is held to have been used in view of the established rule that statutes are construed as relating to future transactions and not to past. State v. Grant, supra, 118; Seamans v. Carter, supra, 549; Finney v. Ackerman, supra, 270. (3) If the constitutional provision authorizing the cumulative voting of shares, was intended to apply to the defendant corporation, it was in violation of section 10 of article 1 of the Constitution of the United States, providing that no State shall pass any law impairing the obligation of contracts, and void. State ex rel. v. Greer, 78 Mo. 188; Hayes v. Commonwealth, 82 Pa. St. 518; Orr v. Bracken Co., 81 Ky. 593. The charter constitutes a contract, "entered into jointly and severally between the members of the corporation themselves, or, as it is sometimes expressed, the contract between the members or stockholders and the corporation, whereby each subjects his interests, with certain restrictions, to the control of the corporate management, for the accomplishment of the ends for which the company was formed." 1 Beach on Private Corporations, sec. 23; 1 Cook on Corp. Law (3 Ed.), sec. 493, and cases cited; Clearwater v. Meredith, 1 Wall. 40; Whitman v. Bank, 176 U. S. 559; Bank v. Hawkins, 174 U. S. 364; Flash v. Conn,. 109 U. S. 371; Railroad v. Hughes, 22 Mo. 297; State ex rel. v. Greer, 78 Mo. 194;

Gregg v. Granby Mining and Smelting Co.

Cooley on Constitutional Lim. (4 Ed.), 348; Ogden v. Saunders, 12 Wheat. 213; McCracken v. Hayward, 2 How. 612; Gantley v. Ewing, 3 How. 707; Bronson v. Kinzie, 1 How. 311; White v. Hart, 13 Wall. 646; Barnitz v. Beverly, 163 U. S. 118; Seibert v. Lewis, 122 U. S. 284; Louisiana v. New Orleans, 102 U. S. 203; Reed v. Swan, 133 Mo. 100; Fisher v. Patton, 134 Mo. 32; Leete v. Bank, 115 Mo. 184. (4) Even in those cases in which the Legislature reserves the general power to alter, suspend and repeal charters granted or to be granted by it, such reservation does not authorize the invasion or destruction of purely private rights acquired under such charters. People v. O'Brien, 111 N. Y. 1; Greenwood v. Freight Company, 105 U. S. 13; Knoxville v. Railroad, 22 Fed. 763; Railroad v. Marsh, 17 Wis. 18; Orr v. Bracken, 81 Ky. 593; San Mateo Company v. Railroad, 8 Sawy. 279. (5) The stockholders of the defendant company by so amending their articles of association, have not made themselves subject to all the provisions of article 8, chapter 42, Revised Statutes 1889, including the section relating to cumulative voting. This article was never intended to apply to existing corporations, whether incorporated under special or general laws. This is shown by the provision which enables any corporation in the State to bring itself within its provisions; so that whether or not a corporation already formed would come within its provisions, was by the terms of this law left entirely optional with itself. The only question, then, to examine in this connection is whether or not this corporation has voluntarily and of its own motion elected to subject itself to the particular provision of this article with respect to cumulative voting.

*Kehr & Tittmann* and *Nagel & Kirby* for respondent.

(1) The provision for cumulative voting in the Constitution of 1875, and in subsequent acts of the Legislature, does

not in any manner deprive any stockholder in the defendant company of any right which he had secured by the organization of said company. The object of the provision giving each stockholder a vote, as contained in the Act of February 15, 1864, was to change the common-law rule, which gave one vote to each stockholder, regardless of the number of his shares. Morawetz on Private Corp., sec. 476; McCrary on Elections, sec. 642; Harvard Law Review, Nov. 1888, p. 156. (2) But if the view is adopted that the provision which gives each share one vote did become a part of defendant's original charter, still the power to amend such a provision was clearly reserved by the law under which defendant was organized. R. S. 1845, sec. 7, p. 123; 1 R. S. 1855, sec. 7, p. 371. Unless the power to alter or repeal has been clearly surrendered, the State may exercise it as to all corporations which have, by one means or another, come into possession of a charter. State ex rel. v. Greer, 78 Mo. 188. Under this reserved power to alter or repeal, the right to cumulative voting may clearly be given. Railroad v. Renshaw, 18 Mo. 214; Atty.-Genl. v. Looker (Mich.), 69 N. W. 929; Cross v. Railroad (W. Va.), 12 S. E. 1071; Meadow Dam Co. v. Gray, 30 Me. 548; 1 Am. Corp. Cases, p. 15; Railroad v. Miller, 132 U. S. 75; Mass. Genl. Hospital v. Life Ins. Co., 4 Gray, 227; Suydam v. Moore, 8 Barb. 358; Griffin v. Insurance Co., 3 Bush, 592; State v. Person, 32 N. J. 134; Miller v. State, 15 Wall. 478. (3) Defendant, by increasing its capital stock in July, 1894, accepted all the provisions and conditions of the law then in force, among others the right to cumulative voting. R. S. 1899, sec. 1327; Wright v. Cent. Cal. C. Co., 67 Cal. 532; 1 Waterman on Corp., p. 131; Green v. Seymour, 3 Sandf. Chancery 285; Monongahela Nav. Co. v. Coon, 6 Pa. St. 379; Railroad v. City Council of Augusta (Ga.), 28 S. E. 126; Jackson v. Walsh, 37 A. & E. Corp. Cases, p. 51; Beaty v. Lessee of

Knowles, 29 Sup. Ct. U. S. (4 Pet.) 168; W. U. Tel. Co. v. Railroad, 1 McCrary (C. C. Kansas) 581-97; Spelling on Priv. Corp., sec. 1065, citing Monongahela Bridge Co. v. Railroad, 114 P. St. 478; Kenton County Court v. Turnpike Co., 10 Bush. 529; Lyons v. Railroad, 32 Md. 18; Illinois River Co. v. Zimmer, 20 Ill. 654. (4) This proceeding is based on the statute, and has been recognized and enforced by the courts. R. S. 1899, secs. 988-992, p. 331; Tomlin v. Bank, 52 Mo. App. 430; State ex rel. v. McGann, 64 Mo. App. 229.

GANTT, J.—The undisputed facts upon this record are that the Granby Mining and Smelting Company was incorporated on the sixth day of April, 1864, under the provisions of an act of the General Assembly of this State entitled, "An Act relative to incorporations for manufacturing and other purposes," approved February 15, 1864, for the purpose of carrying on the mining and smelting business.

This act (Laws 1863, p. 20, sec. 2) provided with reference to the election of directors: "Such election shall be made by such of the stockholders as shall attend in person, or by proxy in writing; each stockholder shall be entitled to one vote on each share of stock; the persons having the greatest number of votes shall be deemed elected."

On the fourteenth day of July, 1894, a meeting of the stockholders of the company was held for the purpose of voting upon a proposition to amend the charter of the corporation so as to permit it to manufacture, into other forms, the products of mining and smelting. Sixty days' notice of this meeting was given in the manner provided in section 2780, Revised Statutes 1889, and at said meeting 14,153 shares of the capital stock of the company were represented, and all were voted in favor of the proposition, and none against it. The amount of the capital stock of the corporation was $2,000,000 divided

into 20,000 shares of the par value of $100 each, so that the votes for the amending of the charter and extending the privilege of the corporation represented more than two-thirds of the shares of the capital stock of the company. At the regular annual meeting of the stockholders on the eighth of March, 1898, certain stockholders voted cumulatively for certain persons for directors, but the inspectors of the election refused to count said votes, and returned that L. C. Nelson, L. C. Burnes, H. G. Grover, D. D. Burnes, and E. S. Gatch were elected directors. Had the cumulative votes been received and counted, the same parties would have been elected, save and except that Norris B. Gregg, the plaintiff, would have been declared elected instead of L. C. Nelson. This action is brought by plaintiff under sections 2520 to 2523, inclusive, to oust said Nelson and to install plaintiff as director of said company.

The circuit court found the issues for plaintiff, and adjudged that he was duly elected director of said company, and that said corporation receive and seat him as such, and exclude L. C. Nelson from the said office of director, and enjoined him from intermeddling with the office of director of said company, and adjudged costs to plaintiff against the company and L. C. Nelson. From that judgment the defendants appealed to this court.

I. The Constitution of Missouri adopted by the people on October 30, 1875, went into effect November 30, 1875. By the sixth section of article 12 thereof it is provided that, "In all elections for directors or managers of any incorporated company, each shareholder shall have the right to cast as many votes in the aggregate as shall equal the number of shares so held by him or her in said company, multiplied by the number of directors or managers to be elected at such election; and each shareholder may cast the whole number of votes, either

in person or by proxy, for one candidate, or distribute such votes among two or more candidates; and such directors or managers shall not be elected in any other manner."

The questions propounded by the defendants are:

*First.* "Was section 6 of article 12 of the Constitution of 1875 intended to have a retrospective operation as to the charter of the Granby Mining and Smelting Company?"

*Second.* "If so, had the convention which framed that Constitution, power, under the Constitution of the United States, to substitute the cumulative plan of voting the stock in the election of directors of that corporation for the plan provided by the law at the time of its incorporation?"

Before proceeding to answer these questions raised by defendants it will be necessary to recur to the Act of 1864 by virtue of which the Granby company was organized. By section 2 of that act, already noted, "each stockholder was entitled to one vote on each share of his stock."

It seems that at common law each shareholder was entitled to but one vote irrespective of the number of shares held by him. Many statutes were passed both in England and by the several States of this Union which proceeded upon the consideration that the stockholder is entitled to a voice in the control of the affairs of a corporation in proportion to the number of shares owned by him. It was evidently the purpose of our Legislature to settle this question by a positive enactment to that effect and also to change the rule of the common law, which denied the right to vote by proxy. [Taylor v. Griswold, 14 N. J. Law 223; Morawetz on Private Corps., sec. 476a; McCrary on Elections, sec. 642.] Thus *the share* is made the unit of election, and not the person who owns it, regardless of the number of his shares.

This provision of the Act of 1864, under which the de-

Vol 164 mo—40

fendant corporation was organized, is preserved in the Revision of 1879, section 930, and in that of 1889 in section 2772, and in the present Revised Statutes of 1899 in section 1320. So that to that extent no change has been made in subsequent legislation, but section 6 of article 12 of the Constitution of this State, adopted in 1875, granted the right to each shareholder to vote his shares on the cumulative plan; that is to say, since the adoption of that instrument by the people, he is entitled to cast not only one vote on each share of stock in the election of directors, but is entitled to cast as many votes in the aggregate as shall equal the number of shares so held by him multiplied by the number of directors or managers to be elected at such election, either in person or by proxy, for one candidate, or may distribute such votes among two or more candidates for the directory of said corporation.

That this constitutional provision, if held applicable to charters in force at the time of its adoption, would have materially affected the rights of the shareholders under such charters and would have been retrospective in its character in the absence of a reserved right to make such amendment, we think, is settled law in this State. This court, in State ex rel. Haeussler v. Grœr, 78 Mo. 188, so held and approved the decision in Hays v. Com., 82 Pa. St. 523, in which the Supreme Court of Pennsylvania said: "Now, whilst it can not be said that this would not be an alteration in the terms of the charter, it is nevertheless urged that it is a mere regulation of the right of suffrage in corporations, but affects the vested right of no one. But if it be not a vested right in those who own the major part of the stock of the corporation, to elect if they see proper, every member of the board of directors, I would like to know what a vested right means."

But it is insisted by plaintiff that, granting that the Constitution of 1875, and the statutes passed in pursuance thereof,

did amend the charter of the Granby company, the right to do so was reserved by the State when the law under which said company was chartered was enacted.

By the Revised Statutes of 1845, section 7, chapter 34, page 232, it was provided that, "The charter of every corporation that shall hereafter be granted by the Legislature shall be subject to alteration, suspension, and repeal, in the discretion of the Legislature." This law remained unchanged in the Revised Statutes of 1855 (R. S. 1855, chap. 34, sec. 7, p. 371), and such was the law of this State when the Act of February 15, 1864, under which the defendant, the Granby company was organized, was enacted, and that act contains no exemption from or any modification of the general statutes in this respect.

Since the suggestion of Mr. Justice STORY, in Dartmouth College v. Woodward, 4 Wheaton (U. S.), 518, that if the power to control, alter or amend the charter was reserved in the charter itself, no doubt could exist as to the power of the Legislature to amend or alter the charter, the various Legislatures of this Union have availed themselves of that suggestion and reserved such power either in general laws applicable to all charters as the General Assembly of Missouri has in section 7 of chapter 34, Revised Statutes 1845 and 1855, or incorporated it in subsequently granted special charters. [Pacific Railroad v. Renshaw, 18 Mo. 210.]

The Supreme Court of the United States, as recently as October 18, 1900, in Looker v. Maynard, Atty. Genl., 21 Sup. Ct. Rep. 21, have reaffirmed the right in a case on "all fours" with this. In that case a statute permitting each stockholder of a corporation to cumulate his votes upon any one or more candidates for directors (Michigan Statutes 1885, ch. 112; Pub. Acts 1885, p. 116) was held to be within the power reserved by the State Constitution to its Legislature to alter,

amend or repeal future acts of incorporation, and therefore does not impair the obligation of the contract made between the State and the corporation by its original organization. The court remarking at the close of the opinion, "remembering that the Dartmouth College case (which was the cause of the general introduction into the legislation of the several states of a provision reserving the power to alter, amend, or repeal acts of incorporation) concerned the right of a Legislature to make a change in the number and mode of appointment of the trustees or managers of a corporation, we can not assent to the theory that an express reservation of the general power does not secure to the Legislature the right to exercise it in this respect." [Watson Seminary v. County Ct., 149 Mo. 67; Penn. College Cases, 13 Wall. (U. S.) 213; Miller v. State, 15 Wall. 478; Greenwood v. Freight Co., 105 U. S. 13; Cross v. Railroad, 12 S. E. Rep. 1071; State v. Person, 32 N. J. L. 134; Meadow Dam Co. v. Gray, 30 Maine 547.]

It results that the State having reserved the right to alter, amend or repeal the charter or law under which the Granby company was organized, the Constitution of 1875, and statutes in pursuance thereof, allowing the cumulative vote for directors, are not in violation of the Constitution of the United States, and did not impair the contract of the State with said company, because in accepting the charter it gave its assent to such amendment.

As to the point made that section 7 of chapter 34 of the Revisions of 1845 and 1855 related only to special charters granted by the Legislature, we need only say that the power reserved by that section obviously included all subsequent charters, whether granted by general law or special acts of the Legislature. The words are not susceptible of any other interpretation.

Neither does the supplemental Act of December 13, 1855,

(R. S. 1855, p. 379), affect the question now before us. While that act was in force it was directory only, but it was expressly repealed by section 2 of chapter 224, General Statutes 1865. At all events, it did not affect the power of the Legislature to amend, alter or repeal any charter granted after that Revision of 1845, and as to the method of procedure, any subsequent Legislature could disregard that and adopt one of its own. It had full power to do so.

But there is another view of this case to be considered. The defendant company was organized under the Act of February 15, 1864, and that act made no provision for extending the corporate business, and none was attempted until July, 1894. When the said company and its stockholders proceeded to extend its business, on the fourteenth of July, 1894, the Constitution of 1875 and the acts providing for cumulative voting for directors of corporations were in full force and effect, and the statute then in force permitting any existing corporation to extend its business was section 2779 of Revised Statutes of 1889, in these words:

"Sec. 2779. *May increase or diminish capital, when.*— Any corporation *now existing* or which may hereafter be formed, *for any of the purposes contemplated by this article,* may increase or diminish its capital stock by complying with the provisions of this article, in any amount within the limits of this article, *and may also extend its business to any other purposes authorized by this article, subject to the provisions and liabilities thereof;* but before any corporation shall be entitled to diminish the amount of its capital stock, if the amount of its debts and liabilities shall exceed the amount of capital to which it is proposed to be reduced, such amount of debts and liabilities shall be satisfied and reduced so as not to exceed such diminished amount of capital; and *any existing corporation* heretofore *formed under the general law or any special act,*

may come under and avail itself of the privileges and provisions of this article, by complying with the following provisions; and thereupon, such corporation, its officers and stockholders, shall be subject to all restrictions, duties and liabilities of this article."

Now while defendants seek shelter under the Revised Statutes of 1855, as already said, no attempt had been made to avail themselves of any privilege granted by the general law then, and that revision had been superseded by three revisions, viz., in 1865, 1879, and 1889, and the only law under which they could extend was the section just quoted. Moreover, the record discloses they proceeded under that section to extend their business. Having obtained the privileges conferred by that section, by its very terms they took them subject to "the provisions and liabilities" of the article which authorized the extension. Among those provisions was section 2772, Revised Statutes 1889, which provided that an election of directors should be by the cumulative plan. It was entirely competent for the Legislature to impose this condition when it granted the defendant company and its stockholders a new grant and *pro tanto* made it a new corporation. They accepted the grant and can not evade the obligations. Having participated and received the benefits of the act they are not exempt from its burdens. This we regard as a well-settled principle. [1 Waterman on Corporations, 131; Monongahela Nav. Co. v. Coon, 6 Pa. St. loc. cit. 382; Spelling on Priv. Corp., sec. 1065; Railroad v. Augusta, 28 S. E. 126; W. U. Tel. Co. v. Railroad, 1 McCrary 581; Bridge Co. v. Railroad, 114 Pa. St. 478.]

We deem it unnecessary to discuss the power of the Legislature to destroy the rights of the stockholders under the power to amend or alter the charter. There is nothing in the statute under discussion which looks to such an end. Amendments

like this have been approved by the Supreme Court of the United States, with the emphatic assertion that they in no way even impair the obligation of contracts.

We are clearly of the opinion that the Legislature, by its reserved power when the defendant company was organized, had the right to make the amendment so as to provide for the cumulative vote for directors, and if it had not, that still the subsequent extension of its business on the condition that it should be liable to that provision of the statute, estops it now from complaining of that provision of the statute passed in pursuance of the constitutional provision of 1875.

No objection is made to the procedure invoked by plaintiff, but we can see no objection to it. The statute provides it and it is applicable to this case. [Revised Statutes 1899, secs. 988 to 992; Tomlin v. Bank, 52 Mo. App. 430; State ex rel. v. McGann, 64 Mo. App. 229.]

The judgment of the circuit court is affirmed. *Sherwood, P. J.;* and *Burgess, J.,* concur.