Syllabus.

# Wytheville.

## WINFREE V. RIVERSIDE COTTON MILLS AND OTHERS.

### June 13, 1912.

1. CORPORATIONS—*Amendment of Charter—Constitutional Law—Power of State.*—The reservation by the State of the power to alter or amend charters of incorporation, whether written in the Constitution, in general laws, or in the charter itself, qualifies the grant, and the subsequent exercise of that power cannot be regarded as an act impairing the obligation of contracts.

2. CORPORATIONS—*Amendment of Charter—Acceptance—Effect.*—Under the provisions of the present Constitution every corporation chartered before the Constitution was proclaimed which accepts or effects an amendment or extension of its charter holds its charter and franchise, and all amendments thereof, under the provisions and subject to all the requirements, terms, and conditions of the Constitution, and the laws passed in pursuance thereof, so far as the same may be applicable thereto.

4. CORPORATIONS—*Amendments of Charter—Power Reserved by State—Extent.*—Although the power reserved to the State is to alter, amend, or repeal the charter of a corporation, it is not limited to changes or alterations solely between the State and the corporation, but authorizes amendments and alterations, within certain limitations, directly affecting the stockholders in their relations to the State, to the corporation, and to each other, and it is not necessary that the stockholders shall be mentioned in terms in the instrument reserving the power to the State to alter or amend.

5. CORPORATIONS—*Acceptance of Charter Amendments—Effect—Subject to the Constitution.*—If, by asking and accepting an amendment of its charter, a corporation is brought under the provisions of the Constitution, the wish or declaration, in the application for the amendment, that the charter is not to be amended in any other respect, is unavailing. No matter what the agreement between the stockholders or the desire of the corporation may be, the amendment cannot be obtained upon terms inconsistent with the Constitution and the laws under which the amendment is asked and accepted.

3. CORPORATIONS—*Consolidation—Consent of Stockholders—Amendments of Charter.*—Although corporations engaged in the same or similar business might not have been able to consolidate prior to the present

Constitution, except upon the unanimous vote of the stockholders of each, such consolidations are now authorized by general statute by a majority vote of the stockholders, given under the conditions mentioned in the statute, and this statute is applicable to corporations created by the laws of this State before the present Constitution was proclaimed, but which have been brought under the provisions of the Constitution by accepting amendments of their charters.

6. CORPORATIONS—*Consolidation—Rights of Minority Stockholders.*—Upon the consolidation of two or more corporations, a dissenting stockholder, while he cannot prevent the consolidation, may refuse to surrender his stock for stock in the new corporation, and may refuse to take anything for it less than its actual cash value at the date of the consolidation, and a summary remedy is given him for ascertaining and recovering it, but he is not bound to pursue it.

7. CORPORATIONS—*Consolidation—Remedies of Minority—Equity.*—A bill filed by a dissenting stockholder to ascertain the value of his stock in a corporation which has consolidated with another without his consent will not be dismissed on the ground that he has an adequate and complete remedy at law, as investigations may have to be made and accounts taken, which can be much better done in a court of equity than in a court of law.

8. CORPORATIONS—*Consolidation—State Corporation Commission—Jurisdiction.*—Where the State Corporation Commission has approved the consolidation of two corporations which have complied with the statutory requirements on the subject, and has issued the certificate required by law, the trial courts of the State are without jurisdiction to inquire into or revise its action.

9. CONSTITUTIONAL LAW—*Commerce—Monopolies—Consolidation of Corporations.*—The consolidation, under the provisions of sub-section 40 of section 1105e of the Code of 1904, of two corporations engaged in the same or a similar business, under the circumstances set out in the case in judgment, was not in violation of the commerce clause of the Constitution of the United States, nor of the Sherman Anti-Trust Act.

Appeal from a decree of the Corporation Court of the city of Danville. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Coleman, Easley & Coleman, Harrison & Long,* and *A. B. Percy,* for the appellant.

*R. W. Peatross, Harris & Harris,* and *Phlegar, Powell, Price & Shelton,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The first question to be determined in this case is whether or not the Riverside Cotton Mills, in which the appellant, who was complainant in the court below, was a stockholder, had the right, by a majority vote of all of its stockholders, to consolidate with the Dan River Power and Manufacturing Company, under the provisions of an act entitled "An act concerning corporations," approved May 21, 1903, Acts of Assembly 1902-3-4, pp. 437, 476-480, and found in the Code of 1904 as chapter 46a.

By sub-section 40 of section 1105e of that Code, it is provided, with certain exceptions, which do not affect this case, that any corporation organized or to be organized under any law or laws of this State may merge or consolidate into a single corporation with any other corporation organized for carrying on the same or a similar business under the laws of this or any other State of the United States.

By the following sub-section (41) it is provided how such merger or consolidation may be effected. One of the provisions of that sub-section is that such merger may be authorized by a majority vote at a meeting of the stockholders of each of the corporations proposing to consolidate, called and held in the manner prescribed by that sub-section.

Separate meetings of the stockholders of the two companies were called to consider the proposed consolidation agreement entered into between the directors of the two companies. The appellant, who, as before stated, was a stockholder in the River-side Cotton Mills, protested and voted against the consolidation at the meeting of his company, but the vote of the stockholders at the meeting of each company was, by a large majority, in favor of the consolidation, and the consolidation was subsequently completed or perfected in the manner prescribed by the statute.

The contention of the appellant is that, since the Riverside Cotton Mills was incorporated prior to the enactment of the statute in question authorizing the consolidation of corporations

doing the same or a similar business by a majority of its stockholders, the consolidation could only be effected by the unanimous vote of the stockholders, notwithstanding the provision of the act that such consolidation might be effected by a majority vote.

The appellees, on the other hand, insist that in the year 1882, when the Riverside Cotton Mills was incorporated, under the provisions of chapter 57 of the Code of 1873, sections 59 and 60, the power to alter or amend the charter was expressly reserved by the State, and under that reserved power and section 158 of the Constitution and sub-section 8 of section 1105a of Pollard's Code, passed pursuant thereto, the State had the right to authorize the consolidation in question, even against a stockholder who does not consent to it.

Section 59 provided that, after a charter was certified to the Secretary of the Commonwealth, the court granting it, "or the judge thereof, in vacation, may, upon the motion of said company * * * or on reasonable notice to said company, alter or amend said charter, or change the corporate name of said company; and such alteration, amendment, or change shall be recorded by said clerk and in the office of the Secretary of the Commonwealth * * * and shall be as effectual and legal from that time as if originally a part of the charter."

Section 60 provided that, as soon as the charter of the corporation was lodged in the office of the Secretary of the Commonwealth, the persons signing and acknowledging the certificate, their successors and other persons associated with them, should be a body corporate, "and shall have all the general powers, and be subject to all the general restrictions, provided by this edition of the Code of Virginia, or that may have been heretofore, or may hereafter be, enacted by the General Assembly, in regard to such bodies politic and corporate."

It seems that such a reservation of power to the State prescribed by the laws in force when the charter is granted, whether written in the Constitution, in general laws, or in the charter itself, qualifies the grant, and that the subsequent exercise of that power cannot be regarded as an act impairing the obligation of contracts.

"The effect of such a provision," as was said by the Supreme

Court of the United States in *Looker* v. *Maynard*, 179 U. S. 46, 52, 45 L. Ed. 79, 21 Sup. Ct. 21, "whether contained in an original act of incorporation or in a constitution or general law, subject to which a charter is accepted, is, at the least, to reserve to the legislature the power to make any alteration or amendment of a charter subject to it which will not defeat or substantially impair the object of the grant, or any right vested under the grant, and which the legislature may deem necessary to carry into effect the purpose of the grant, or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the due administration of its affairs."

This language is reiterated and approved in the case of *Polk* v. *Mutual Reserve Fund, &c.,* 207 U. S. 310, 325–6, 52 L. Ed. 222. See also, generally, *Pennsylvania College Cases,* 13 Wall. 190, 212–214, 20 L. Ed. 550; *Miller* v. *People of State of New York,* 15 Wall. 478, 21 L. Ed. 98; *Wright* v. *Minn. Mutual Life Ins. Co.,* 193 U. S. 657, 663–4, 48 L. Ed. 832, 24 Sup. Ct. 549; *Anderson* v. *Commonwealth,* 18 Gratt. (59 Va.) 295.

In January, 1904, upon the recommendation of the directors of the Riverside Cotton Mills Company, the stockholders, at a meeting regularly held, in which 18,002 shares of the entire stock of 20,000 shares of the company were present, and voting, voted unanimously in favor of having the charter of the company amended so as to authorize it to acquire and own stock in other companies not exceeding thirty *per cent.* of the capital stock of that company. The charter was so amended in accordance with the act of Assembly entitled "An act concerning corporations." The object of the amendment, as alleged in the bill, was to enable the Riverside Cotton Mills to acquire $350,000 of the stock of the Dan River Power and Manufacturing Company, in addition to what the former then held in the latter company. The additional stock authorized to be acquired was acquired, and the charter, as thus amended, acted on without objection. At the time that amendment was sought by the Riverside Cotton Mills and granted by the State Corporation Commission, the present Constitution of the State was in force: Section 158 of that instrument, which had been carried into a statute (sub-section 8, sec. 1105a, Pollard's Code) provided that "Every

corporation heretofore chartered in this State which shall hereafter accept, or effect, any amendment or extension of its charter, shall be conclusively presumed to have thereby surrendered every exemption from taxation, and every non-repealable feature of its charter and of the amendments thereof, and also all exclusive rights or privileges theretofore granted to it by the General Assembly, and not enjoyed by other corporations of a similar general character, and to have thereby agreed to thereafter hold its charter and franchises, and all amendments thereof, under the provisions and subject to all the requirements, terms, and conditions of this Constitution, and of any laws passed in pursuance thereof, so far as the same might be applicable to such corporation."

One of the objects of the convention which framed that Constitution was to get rid of special legislation in the creation and government of corporations, and to provide for the incorporation, both of municipal and other corporations, and their government by general laws as far as practicable. This is apparent from sections 117, 154, and 64. In the light of that purpose of the Constitutional Convention, it seems to us that one of the objects of section 158 was to bring corporations theretofore created under the operation of the same general laws which were enacted to govern corporations created after the Constitution went into effect, as far as practicable. The language is sufficiently comprehensive to so provide. It declares that the corporation, after accepting or effecting an amendment to its charter, holds its charter and franchises, and all amendments thereof, under the provisions and subject to all the requirements, terms, and conditions of the Constitution, and any laws passed in pursuance thereof, so far as the same might be applicable to such corporation. The charter which is to be so held is not only a contract between the State and the corporation, but is also a contract between the State and the stockholders, the corporation and the stockholders, and between the stockholders themselves. The provision that the charter shall be held after such amendment under the provisions and subject to all the requirements, terms, and conditions of the Constitution, and of any laws passed in pursuance thereof, so far as applicable, is not limited to the relations be-

tween the State and the corporation, but applies as well to the relations between the State and the stockholders, the corporation and the stockholders, and between the stockholders themselves.

That this is the construction which should be placed upon the language used is shown by the construction which has generally, if not universally, been placed upon the language reserving the power to the State to amend, alter, or repeal a charter. Although the power reserved is to alter, amend, or repeal the charter, it is not limited to changes or alterations solely between the State and the corporation, but authorizes amendments and alterations, within certain limitations, directly affecting the stockholders in their relations to the State, to the corporation, and to each other.

In *Looker* v. *Maynard, supra,* the power to alter or amend, etc., reserved to the State, it was held, authorized the legislature to give the right of cumulative voting to each stockholder.

Under a like power it was held in *Anderson* v. *Commonwealth,* 18 Gratt. (59 Va.) 295, that, although the charter of an express company did not make the stockholders personally liable for debts of the company, the legislature had the power to so modify the charter as to make them personally liable. See, also, *Lord* v. *Equitable Life Assurance Society,* 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. (N. S.) 420; *Gregg* v. *Granby, &c. Co.,* 164 Mo. 616, 65 S. W. 312.

These, and other cases which might be cited, show that, in order for the State to make amendments to or alterations in the charter of a corporation which affect stockholders in their relation to the corporation, to the State, or between themselves, it is not necessary that the stockholders shall be mentioned in terms in the instrument reserving the power to the State to alter or amend, but that the power reserved to alter or amend the charter is sufficient for that purpose.

But it is argued that the amendment made to the charter of the Riverside Cotton Mills Company in 1904, upon the application of that company, cannot have the effect of amending its charter, and bringing it under the general laws of the State, so as to authorize it to consolidate with another company by a majority vote of its stockholders, because, in its application, it was declared that the amendment sought by that application was not to "affect or

amend said charter in any other respect or particular, but that the same, in all other respects, shall continue as now."

If the effect of the amendment asked for and made was, as we have seen, to bring the corporation under the provisions of section 158 of the Constitution, the wish or declaration in the application for the amendment, that the charter was not to be amended in any other respect, would avail nothing. The amendment asked for could not be obtained, whatever might be the agreement of the stockholders or the desire of the corporation, upon terms inconsistent with the Constitution and laws under which it was asked and accepted. *Yazoo & Miss. &c. R. Co.* v. *Adams,* 180 U. S. 1, 23–4, 45 L. Ed. 415, 21 Sup. Ct. 256.

While, under the provisions of section 1105e of the Code, the Riverside Cotton Mills Company had the right to consolidate with the Dan River Power and Manufacturing Company by a majority vote, any stockholder of either corporation who did not give his assent to such consolidation, and was dissatisfied therewith, had the right to refuse to become a stockholder in the consolidated corporation, and was entitled to receive from such consolidated corporation the fair cash value of his stock as of the day before the vote for consolidation was cast, and a summary remedy was provided for ascertaining the value of such stock, and to secure its payment to the dissenting stockholder. Sub-section 41.

While this summary remedy is given by the statute, and the appellant might have pursued it, he was not bound to do so. Although the consolidating statute took away from him the right to defeat the consolidation by refusing to assent to it, it did not not take away from him the right to refuse to surrender his stock for stock in the new corporation, or to refuse to take anything for it less than its actual value at the date of the consolidation. *Barnett* v. *Philadelphia Market Co.,* 218 Pa. St. 649, 67 Atl. 912; *Colgate* v. *U. S. Leather Co.,* 67 Atl. 657; 5 Thomp. on Corp., sec. 6060.

To ascertain that value, under the allegations of the bill, investigations into the condition of the Riverside Cotton Mills may have to be made, and accounts taken, which could be much better done in a court of equity than in a court of law. The demurrer to the bill, on the ground that the appellant had a complete and

adequate remedy at law, was therefore properly overruled. *Hickman* v. *Stout,* 2 Leigh (29 Va.) 6; *Taylor* v. *Nelson,* 14 Gratt. (55 Va.) 214; *Coffman* v. *Sangster,* 21 Gratt. (62 Va.) 263; *Nat. Life Assurance, &c.* v. *Hopkins, Adm'r,* 97 Va. 167, 33 S. E. 539.

It is insisted by the appellant that even if the Riverside Cotton Mills had the authority and right, by a majority vote, to consolidate with another company engaged in the same or a similar business, the consolidation in question was invalid, and should be set aside and annulled, because the provisions of section 1105e of the Code have not been complied with, and for the further reason that, even if they had been, the agreement of consolidation was so inequitable and unjust in its provisions to the appellant, and other stockholders similarly situated, that a court of equity should set aside the agreement on that ground.

By section 156 of the Constitution of the State, sub-section "a," it is provided: "Subject to the provisions of this Constitution, and to such requirements, rules, and regulations as may be prescribed by law, the State Corporation Commission shall be the department of government through which shall be issued all charters and amendments, or extensions thereof, for domestic corporations, and all licenses to do business in this State to foreign corporations; and through which shall be carried out all the provisions of this Constitution, and of the laws made in pursuance thereof, for the creation, visitation, supervision, regulation, and control of corporations chartered by or doing business in this State."

The agreement of the two corporations to consolidate, and the vote in favor thereof, were certified by the proper officers, and in the manner prescribed by sub-section 41 of section 1105e of the Code, to the State Corporation Commission. Upon those papers being presented to the State Corporation Commission the same sub-section declares that it shall ascertain and declare whether the applicants have, by complying with the requirements of the law, entitled themselves to the merger or consolidation applied for, and shall issue or refuse a certificate thereof accordingly; if it be issued, the said agreement and certificate, with the action thereon of the commission, shall be certified by the commission to the Secretary of the Commonwealth, and shall be recorded and lodged

in the manner in this act before provided as to the recordation and lodging of the original certificate of incorporation or articles of association of the corporation so consolidating, and when such certificate shall be filed for recordation in the office required as to original certificates of incorporation or articles of association, as the case may be, the said merger or consolidation shall be complete, and the merged or consolidated corporation may proceed to carry out the details of said merger and consolidation according to the terms of the agreement, and to transact and carry on business for which it was formed." All this was done in this case.

By sub-section "d" of section 156 of the Constitution, it is provided that "No court of this Commonwealth (except the Supreme Court of Appeals, by way of appeal as herein authorized) shall have jurisdiction to review, reverse, correct, or annul any action of the commission within the scope of its authority, or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties; provided, however, that the writs of *mandamus* and prohibition shall lie from the Supreme Court of Appeals to the commission in all cases where such writs, respectively, would lie to any inferior tribunal or officer."

The State Corporation Commission having approved the consolidation of the two corporations, and issued the certificate prescribed, which action was clearly "within the scope" of its authority, the trial court very properly held, under the plain language of sub-section "d" of section 156 of the Constitution, that it had no jurisdiction to set aside or annul the consolidation thus effected.

It is also insisted that the consolidation of the two corporations was in violation of the commerce clause of the Constitution of the United States and of the act of Congress known as the "Sherman Anti-Trust Act." Act July 2, 1890, ch. 647, 26 Stat. 209 (U. S. Comp. Stat. 1901, p. 3200).

Whether these were not questions to be considered and passed upon by the State Corporation Commission when it approved the consolidation and issued its certificate to the consolidated company need not be determined; for, whether they were or not, it is plain, under the allegations of the bill, that the consolidation was not in violation of either the commerce clause of the Federal

Constitution or the Sherman Anti-Trust Act.    See *Standard Oil Co.* v. *United States*, 221 U. S. 1, 55 L. Ed. 619, 31 Sup. Ct. 502, 34 L. R. A. (N. S.) 834; *United States* v. *American Tobacco Co.*, 221 U. S. 106, 55 L. Ed. 663, 31 Sup. Ct. 632.

The court is of opinion that the corporation court properly overruled the demurrer to the bill, and to that extent its decree must be affirmed, and the cause is remanded for further proceedings not in conflict with the views expressed in this opinion.

*Affirmed.*