# Richmond.

## News-Register Co., Inc. and Others v. Rockingham Publishing Co., Inc.

November 11, 1915.

Absent, Keith, P.

1. PARTNERSHIP—*Receiver—Order Appointing.*—On a preliminary application for a receiver of partnership assets, the decree appointing a receiver should go no further in passing upon the rights of the parties and in assuming the conduct of the business of the partnership than, in view of the nature of the business, is necessary.

2. PARTNERSHIP—*Corporations—Power to Enter Into.*—Corporations, unless authorized so to do, have no power to enter into a partnership, either with each other, or with individuals, as the stockholders are entitled, in the absence of notice to the contrary in the charter, to assume that their directors will conduct the corporate business without sharing that duty and responsibility with others. But such power may be conferred by charter, and when conferred the reason underlying the rule against its exercise no longer exists.

3. CORPORATIONS—*Private Corporations—Charter—Amendments—Powers—Constitutional Law.*—Under the laws of this State a private corporation may be created for the transaction of any lawful business, or to promote or conduct any legitimate object or purpose, and amendments of charters may contain any provision which the charters themselves might have contained. Charters to private corporations, or amendments thereof, which do not authorize anything which is *malum in se,* or anything which is prohibited by the Constitution or statutes of this State may be granted by the State Corporation Commission. This does not conflict with section 154 of the Constitution requiring "that "the creation of corporations and the extension and amendment of charters shall be provided for by general laws."

4. CORPORATIONS—*Private Corporations—Charter—Powers.*—The words "creating and defining" as used in section 1105-a, subsection 2, clause h, of the Code (1904) are amply broad to provide for authority in the charter of any private business corporation to do any act not unlawful in itself and not prohibited by the statute.

5. STATUTES—*Construction—Laws of Another State.*—The adoption of a statute of another State carries with it the adoption of the construction placed thereon by the State in which the statute originated.

6. CORPORATIONS—*Power to Charter—General Law—State Corporation Commission.*—The certificate of incorporation of a private corporation granted by the State Corporation Commission in pursuance of the powers conferred by the "Act Concerning Corporations" is equivalent to a special act of the legislature.

7. CORPORATIONS—*Amendment of Charter—State Corporation Commission—Constitutional Law.*—It is within the jurisdiction of the State Corporation Commission to determine under what clause of the statute and in what form it will grant an amendment of the charter of a private corporation, and when it has acted its action is final, and not subject to review under section 156 of the Constitution, except by the Supreme Court of Appeals, by way of appeal, as therein authorized.

8. ESTOPPEL—*Corporations—Ultra Vires Contracts.*—Where the rights of the public are not involved, a purely private corporation, entering into a contract in excess of its powers and receiving benefits thereunder, is estopped from setting up the defense that it was without power to make it, so far as such estoppel is necessary to do justice between the parties. This is true as well of a contract partly performed as of one fully executed, and it is especially true of a corporation which has sought and obtained an express grant of power in its charter.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*J. B. Stephenson* and *George S. Harnsberger,* for the appellant.

*D. O. Dechert* and *H. W. Bertram,* for the appellee.

KELLY, J., delivered the opinion of the court.

The decision of this appeal turns upon the effect of a partnership agreement between two Virginia corporations.

On and before May 31, 1913, the News-Register Company was publishing in the town of Harrisonburg a newspaper called the *Daily News,* and the Rockingham Publishing Company was publishing at the same place another newspaper called the *Daily Record.* The two corporations, on the last-named date, entered into a contract which provided, among other things, that the publication of both the above-mentioned newspapers should cease after June 4, 1913, and that both corporations, while retaining their corporate names, franchises and organizations, should thereafter for a period of ten years unite, under the trade name of "The News-Record Association," in the publication of *The Daily News-Record,* and in the conduct of a general publishing and stationery business and such other incidental business as either party might carry on under its charter. Each party was to contribute $500 in cash and turn over to the association, under written leases, certain valuable property and equipment. Both were thereafter to contribute in equal shares such sums of money as might be necessary, and to share equally in the profits. The contract, which need not be recited in full, established a partnership. This is conceded. Both parties evidently assumed that such a contract would, or might be, beyond the scope of their corporate powers unless specifically authorized in their charters, and both, accordingly, in advance and for this express purpose, procured from the State Corporation Commission charter amendments which in terms plainly authorized the sort of contract which was entered into between them. The action of the stockholders of both companies authorizing the amendments appears to have been unanimous, and it was in strict accord with the statute applicable to such cases.

The association thus provided for began its operation as soon as the contract was executed, and continued until sometime in April, 1915, when certain differences, largely personal in their nature, which had arisen between the representatives of the two corporations, became so · serious that the appellee

instituted a suit in equity against the appellants, the chief object of which was to restrain and enjoin R. B. Smythe (a large stockholder in the News-Register Company), who had been designated in the contract as the business manager, from having anything further to do with the affairs of the association. The bill in that case was presented in vacation to a circuit judge having jurisdiction to grant the injunction, and he refused the same, upon the ground (stated in a memorandum opinion but not made a part of the record) that the contract by which the association was formed was *ultra vires* and void. The bill was then presented to one of the judges of this court who, without comment, endorsed thereon a refusal of the injunction. No further action appears to have been taken in that cause. It is not relied upon here as *res adjudicata,* and in our opinion could not be so regarded.

On April 16, 1915, which was the next day after the refusal of the injunction as above set out, the News-Register Company notified the Rockingham Publishing Company in writing that "the News-Record Association had been discontinued," and that certain gentlemen had been appointed a committee from the former company to confer with a committee from the latter "relative to a fair and equitable adjustment of the accounts and dealings between these two companies." The two committees thus suggested apparently tried to arrange a meeting, but it was never held. Just why they did not meet is not clear, and the question is not material. It is safe to say, however, from the disclosures in the record, that if they had met, no adjustment would have been reached.

Finally, on April 20, 1915, the appellee, pursuant to notice previously given, presented to the judge of the Corporation Court of the city of Staunton the bill in the present case, which, while still insisting that the contract is valid, further insists that, independent of that question, the appellee has the right to a settlement and proper distribution of the assets, to have a receiver appointed to preserve the assets pending a proper

administration, and an injunction to restrain the appellees from interfering with the business or property of the association. Upon a consideration of this bill and the answers, and the numerous accompanying exhibits and affidavits, the judge aforesaid directed the decree now under review.

We deem it unnecessary to go minutely into the origin and nature of the differences between the parties, or to recite in detail the various charges and countercharges in the bill and answer, for the reason that, as stated in the petition for appeal, "the main, indeed the sole, contention in this case centers upon the question whether, under the laws of Virginia, two corporations can form a partnership." It is true that some of the specific directions of the decree are criticised and made the subject of separate assignments of error, but these criticisms, whether so intended or not, must at last rest upon the alleged invalidity of the contract. The decree, in itself, in all its provisions, is in substantial accord with what, under well settled rules of equity jurisprudence and procedure, it should be if the partners in this case were natural instead of artificial persons. In the language of the learned judge of the lower court, whose written opinion is made a part of the decree appealed from, "It appears perfectly patent from an inspection of this record, and particularly from the affidavits filed (many of which are illuminating only this far) that the two parties are in such a position toward each other that no fair and equitable division of the assets of the partnership could be accomplished without the interposition of a court of equity. The very business itself is such that any cessation thereof, which might be brought about by the unrestrained act of either party, would be exceedingly harmful to the interests of both parties."

If the partnership had a legal existence at all, the propriety of the decree cannot be seriously questioned, either as to the cause for its rendition or the specific directions which it contains. See 30 Cyc. 658; Story on Partnership (7th Ed.),

sec. 228; High on Receivers (2d Ed.), secs. 472, 475, 480, 481, 485. Under these authorities, to which many others of like tenor and effect might be added, there can be no doubt that the situation was such as, in the ordinary case, to call for the interposition of a court of equity, and that the decree went no further in passing upon the rights of the parties and in assuming the conduct of the business of the association than, in view of the nature of the business, was necessary and proper upon a preliminary application for a receiver.

We come, then, to the real question in the case, which relates to the power of the two corporations to form a partnership. The appellants' contention, as stated in their brief, "that corporations, unless expressly authorized, have no power to enter into a partnership, either with each other or with individuals," is perfectly sound, subject to the slight qualification by some respectable authorities that the power may be impliedly as well as expressly given. The law to this effect is old and well settled, but not more so than the converse proposition, that when the authority is given the exercise of such power is entirely competent and valid. This is so because when the power is given in the charter, the reason underlying the rule against its exercise no longer exists. This underlying reason is that the stockholders are entitled, in the absence of notice to the contrary in the charter, to assume that their directors will conduct the corporate business without sharing that duty and responsibility with others. The clear result of the authorities, including those cited by appellants, is that the rule against corporate partnerships is limited to cases in which the power in question does not appear in the charter, and that the reason for the rule is as we have here stated it. See, *Fechteler* v. *Palm Bros.,* 133 Fed. 462, 66 C. C. A. 336; *Whittenton Mills* v. *Upson,* 10 Gray (Mass.) 582, 71 Am. Dec. 681; 2 Cook on Corp. (6th Ed.), sec. 678; 7 Am. & Eng. Enc. L. (2d Ed.) 794, 795; *Hackett* v. *Multnomah R. Co.,* 12 Or. 124, 6 Pac. 659, 53 Am. Rep. 329; 1 Min. Inst. 560; 1 Elliott on Contracts, sec. 483; 10 Cyc. 1143.

It is evident, therefore, that there never has been and is not now any essential illegality in the power of a corporation to form a partnership, and that the existence and valid exercise of such power depends solely upon its being embodied in the charter. We have already seen that in this case the charters of both companies were amended, with the full approval of the stockholders given in advance, for the express purpose of validating the contract. The remaining question is whether the amendments themselves are valid.

We think they are. They do not authorize anything which is *malum in se,* or anything which is prohibited by the Constitution or statutes of the State. The issuance of an original charter containing this power would, therefore, seem to be within the scope of the authority of the Corporation Commission.

This conclusion is not, as insisted by counsel for appellants, in conflict with section 154 of the Virginia Constitution, requiring that "the creation of corporations and the extension and amendment of charters, shall be provided for by general laws," etc. Upon the contrary, the very things which was done by these corporations and approved by the Commission seems to have been expressly provided for in the Constitution and general laws of the State. The Constitution. does not say that the legislature shall undertake to specify the powers and purposes of each class of corporations in such way as that they shall be uniform in each charter. This would not have been feasible. For example, a corporation chartered to own and operate a coal mine may have powers differing materially from those of a mercantile corporation, and a contract clearly within the charter powers of the one might be plainly *ultra vires* for the other. Whether the former could, as an original proposition, lawfully purchase and operate a department store, or the latter a coal mine, would depend solely upon the language of the respective charters. The extent to which the powers of any two corporations existing under chapter one

of the corporation act will be identical must depend entirely upon the terms embodied in the charter or some amendment thereto.

Amendments may contain any provision which an original charter might contain. Code, sec. 1105-a, subsec. 7. An original charter may be issued by the Commission "for the transaction of any lawful business, or to promote or conduct any legitimate object or purpose." Sec. 1105-a, subsec. 1. Bearing in mind that the formation of a partnership with another corporation is only unlawful when unauthorized by the charter, let us look to a further and, as we conceive, a very pertinent and significant provision of the act concerning corporations.

Section 1105-a, Code, 1904, subsection 2, clause h (which is conspicuously different from the corresponding clause relating to charters for public service corporations) is as follows: "The certificate of incorporation may also contain any provision which the incorporators may choose to insert for the regulation of the business, and for the conduct of the affairs of the corporation; and any provision creating, defining, limiting, or regulating the powers of the corporation, of the directors, or of the stockholders, or of any class or classes of stockholders; provided, such provision be not inconsistent with this act."

If there be any serious question as to the right of the incorporators in any case to specify and thus obtain the power for the corporation to form a partnership under clause *c* of the section last cited (which clause provides for a statement of the purposes of the corporation), the terms of clause *h* remove the question entirely. This clause originated in the New Jersey corporation act, and was embodied in our statute *ipsissimis verbis.* It would seem too clear for argument that the words, "creating and defining" as used in the statute are amply broad to provide for authority in the charter of any private business corporation (these words are not used in

reference to public service corporations) to do any act not unlawful in itself and not prohibited by the statute. If support be needed for this conclusion it is found in the construction placed upon the same provision in New Jersey by the text-writers and courts of that State.

In Dill on Corporations (N. J., 4th Ed. 1902), pp. 8-9, the author says: "When we seek to ascertain the powers of a corporation under this act, we find that there are two sources from which its express powers are derived. These are: (1) The 'Act Concerning Corporations;' (2) The Certificate of Incorporation. . . . 'The general act gives to all corporations general corporate powers and all others necessary to their exercise. If these were not sufficient to affect the objects of the corporation, recourse was formerly had to the legislature for a specific grant of power. The Constitution providing that the legislature shall pass no special act conferring corporate powers, but shall pass general laws under which corporations may be organized and corporate powers of every nature obtained, and the general corporation act being as it now stands passed in obedience to the mandate of the Constitution, the certificate required by this act becomes the charter of the company, and the equivalent of the former special act of the legislature.' *Ellerman* v. *Chicago Junct. Rys. Co.,* 49 N. J. Eq. 217, 240, 241, 23 Atl. 287."

The case of *Ellerman* v. *Chicago Junction Rys. Co., supra,* was decided in 1891. In 1898 the New Jersey corporation act was amended so as to authorize incorporators, just as the corresponding Virginia act now does, to insert in their certificates or incorporation provisions "creating and defining the powers of the corporation," and Judge Dill, at page 23 of the work above cited, in commenting on his amendment, says: "The words 'creating and defining' are new, and carry to its logical result the principle laid down in *Ellerman* v. *Chicago Junction Rys. Co.,* 49 N. J. Eq. 217, 23 Atl. 287, that the certificate of incorporation is equivalent to a special act of the legisla-

ture." See also, Dill on Business Companies, N. J. (1910), pp. 15, 18; Conyngton on Corp. Organization (1908), sec. 111, p. 127.

This construction, which must be regarded as having been adopted along with the act, does not appear to us to be either radical or unsafe. It does not extend to any public service corporation, or affect any public right or duty; and it is in accord with the modern trend of legislation and judicial policy regarding the powers of purely private corporations. 2 Cook on Corp. (6th Ed.), sec. 681, p. 2059 *et seq.;* Conyngton Corp. Organization, sec. 111, p. 126.

The point was made in oral argument, as we understood it, that the provisions of section 1105-a, 2 (h), could not be invoked in this case, because what the corporate appellant and the appellee actually did was to amend a section of their charters corresponding to clause (c), and did not attempt to act under clause (h). In disposing of this contention, if we are correct in understanding it to be relied upon, we need only say, first, that as already indicated there seems no sufficient reason why the power in question might not in any original or amended charter be incorporated under either of the clauses, and, second, that the matter was one which, certainly as to form if not as to substance, addressed itself to and was clearly within the jurisdiction of the Corporation Commission, and its action thereon is final. If, therefore, the authority sought by the amendments could only be obtained under clause (h), the mere matter of form and arrangement cannot be the subject of question here.

"No court of this Commonwealth (except the Supreme Court of Appeals, by way of appeal as herein authorized) shall have jurisdiction to review, reverse, correct, or annul any action of the Commission within the scope of its authority." Va. Constitution, sec. 156 (d), *Winfree* v. *Riverside Cotton Mills,* 113 Va. 717, 726, 75 S. E. 309.

There is, however, another view of this case which is likewise

conclusive against the appellants. If it be conceded that the amendments to the charters of both contracting parties were beyond the scope of the powers of the Corporation Commission, the fact that both parties applied for the amendments and dealt with each other thereunder operates to estop either of them from questioning the power of the other. It is, of course, true that where a corporation agrees to do some essentially unlawful act, or to violate some public duty or contravene some rule of public policy, then and in every such case there is a continuing duty to desist from the performance of the agreement and no estoppel arises. Here, however, the parties claiming to act in good faith with each other amended their charters for the express purpose of making a contract, the validity of which involved no question of public duty or public policy, but which depended solely for its legality upon the power sought to be obtained. The statement in the answer of one of the defendants (appellants here) and endorsed by the other, that the appellee "has nobody to blame but itself and its own stupidity for attempting such a thing as a partnership with another corporation," does not, under the facts of this case, appeal to equity and good conscience. The appellee had the right to assume that the corporate appellant was co-operating with it in good faith in procuring the amendments. It can hardly be supposed that the above quotation from the answer means that the appellants believed at the outset that both parties were doing a futile and stupid thing in amending their charters; but whatever it means, there can be no doubt that the appellee does have somebody besides itself to blame for the present situation, namely, the other party to the contract. Upon the faith of that contract the separate properties of the two corporations were united for the joint business; the publication of both newspapers was stopped and a new one started; the original subscription lists of both companies were turned over to the association; new assets have been acquired; new liabilities and new credits have accrued; and the situation

of both parties has been so materially changed as that a restoration of the *status quo* is not now possible. The business of the association was being conducted by the appellant, Smythe, as business manager, in a building owned by the appellant corporation under a lease from the latter. This lease, as well as the contract which provided for it, the appellants now seek to arbitrarily treat as *ultra vires* and void, thus automatically placing themselves in absolute control of the business and exclusive possession of the assets; and their contention is that the remedy is solely a legal one, upon a *quantum meruit,* or an action of detinue. We cannot assent to this view of the law as applied to the facts of this case.

Without adding to the length of this opinion by any extended quotations from the authorities, we are of opinion that where the rights of the public are not involved, a purely private corporation, entering into a contract in excess of its powers and receiving benefits thereunder, is estopped from setting up the defense that it was without power to make it, so far as such estoppel is necessary to do justice between the parties. This is true as-well in case of a contract partly performed as in case of one completely executed, and is, both by reason and authority, especially true where the corporation concerned has sought and obtained an express grant of the power (even though not validly conferred) in its charter. See 4 Thompson, secs. 5249, 5257; Lile's Notes on Private Corporations, p. 86; 10 Cyc. 1153, 1156, 1157-8; 2 Cook Corp. (6th Ed.), 2059 *et seq; Harris* v. *Independence Gas. Co.,* 76 Kan. 750, 92 Pac. 1123, 13 L. R. A. (N. S.) 1171, and the mass of authorities to the same general effect referred to in those here cited.

The facts of the case remove it from the influence of *L. & N. R. Co.* v. *National Car Co.,* 110 Va. 413, 66 S. E. 88, 24 L. R. A. (N. S.) 1010, relied on by appellants.

The appellants complain very earnestly of the decree appealed from, because, as they allege, it puts the News-Register Company out of business, excludes it from its own

building, enjoins it from prosecuting the business which the State authorized it to do, and ties the hands of its stockholders and directors. The decree does not go further in this respect than the appellants themselves agreed to go in the contract which they now decline to recognize.

Upon the right and wrong of the original quarrel between the parties to this suit, we do not mean to express any opinion. The record at present is not in condition for any adjudication upon the final right of the parties upon a proper settlement. But we are of opinion that the decree complained of was right, and it will be affirmed.

*Affirmed.*