**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-2345**

_____

In Re:  MIN SIK KANG; MAN SUN KANG,

              Debtors.

-----------------------------------

YEON K. HAN,

              Creditor – Appellant,

          v.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

              Creditor,

          and

RAYMOND A. YANCEY,

              Trustee – Appellee.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:15-cv-00953-LMB-IDD; 10-18839-RGM; 12-01496-RGM)

_____

Submitted: October 5, 2016        Decided: November 29, 2016

_____

Before SHEDD, DUNCAN, and FLOYD, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Timothy J. McGary, Vienna, Virginia, for Appellant. Todd M. Brooks, Baltimore, Maryland, Bradford F. Englander, WHITEFORD TAYLOR & PRESTON LLP, Falls Church, Virginia, for Appellee.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Yeon Han challenges the district court's order affirming the bankruptcy court's grant of summary judgment to Appellee Raymond Yancey, the Chapter 11 Trustee in this bankruptcy case. The bankruptcy court entered a declaratory judgment invalidating a purported transfer of ownership interests to Han in one of the bankruptcy debtors' LLCs, on the grounds that the transfer violated the LLC's operating agreement. Because we agree that the purported transfer is null and void, we affirm.

I.

A.

Although the ownership transfer at issue here took place in 2009, it has its origins in events tracing back to 2004. In February 2004, Grand Centreville, LLC ("Grand Centreville") was created for the sole purpose of acquiring, developing, and managing a retail shopping center in Centreville, Virginia. At the time of its formation, Grand Centreville had one member: a shell company called Grand Equity, LLC ("Grand Equity"). Grand Equity, in turn, was managed by its sole member, Grand Development, LLC ("Grand Development"), another shell company. Grand Development was wholly owned and managed by the Debtors, Min and Mik Kang.

In June 2005, Grand Centreville refinanced an existing loan and executed a "Deed of Trust, Assignment of Leases and Rents and Security Agreement" ("2005 Deed of Trust"). The 2005 Deed of Trust prohibited specific transactions that could threaten the lender's interests. In particular, (1) Grand Centreville's direct and indirect owners could not transfer more than a 49% interest in Grand Centreville; (2) Grand Centreville could not incur debts outside the ordinary course of business, and (3) Grand Centreville could not encumber the property with additional security interests.

During the course of the refinancing, the Debtors incorporated another entity, Grand Formation, Inc. ("Grand Formation"), which became the managing member of Grand Centreville and acquired a 0.5% ownership interest. Grand Equity (99.5% owner) and Grand Formation (0.5% owner) created a new operating agreement ("the 2005 Operating Agreement"), which listed "Ronnie C. Kim" as an Independent Member. Kim, however, testified that he was never a member of the entity. J.A. 1757–64. The 2005 Operating Agreement incorporated requirements from the 2005 Deed of Trust, including restrictions on the transfer of ownership interests, incurrence of debts, and encumbrance with additional liens on the property.

As relevant to the Trustee's standing, the State Corporation Commission of Virginia canceled the existence of

4

Grand Equity and Grand Development for nonpayment of annual registration fees as of December 31, 2008. Virginia law provides that when an LLC is canceled, its property "shall pass automatically to its managers, . . . members, . . . or holders of interest, . . . as trustees in liquidation." See Va. Code § 13.1-1050.2(C).[1] Thus, because the Debtors wholly owned Grand Development, which wholly owned Grand Equity, the interests in Grand Centreville held by the canceled LLCs "pass[ed] automatically" to the Debtors, as trustees in liquidation.

On March 16, 2009, the purported transfer at issue here took place ("the 2009 Sale"). In the 2009 Sale, the Debtors agreed to effectively sell 60% of their interests in Grand Centreville and Grand Formation to Han[2] and James Sohn,[3] in

---

[1] Citations throughout are to the current version of the Virginia Limited Liability Company Act (the "Act"). The Act was amended in 2008, effective April 1, 2009, which resulted in the renumbering of certain provisions related to the cancellation of an LLC's certificate due to nonpayment of registration fees and the process of winding up when such a cancellation occurred. See 2008 Va. Acts 155, ch. 108. No substantive changes were made, and the process now in effect is substantially similar to the process then in effect. See Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 119-20 (4th Cir. 2004).

[2] Han pleaded guilty on May 15, 2013 before Judge Gerald Bruce Lee in the Eastern District of Virginia to two counts of conspiracy to commit wire fraud, including participation in the creation of false HUD-1 settlement statements in connection with the 2009 Sale. See J.A. 1985.

[3] Sohn settled with the Trustee after the bankruptcy court ruled on summary judgment.

violation of the terms of the 2005 Operating Agreement. The Debtors also purported to issue a promissory note in favor of Han and Sohn, which was secured by a security interest in the shopping center.

## B.

On October 19, 2010, the Debtors jointly filed for Chapter 11 bankruptcy. The Office of the United States Trustee appointed the Official Committee of Unsecured Creditors ("the Committee") in early December 2010, which instituted the underlying adversary action to reverse several transactions the Debtors entered into prior to the bankruptcy. In January 2013, the Office of the U.S. Trustee then appointed Appellee Yancey as the Chapter 11 Trustee, and he took over the Committee's claims against Sohn and Han. The Trustee filed a second-amended complaint, seeking, among other relief not relevant here, a declaration that the 2009 Sale was invalid.

The parties filed cross-motions for summary judgment on this claim, with the Trustee arguing that the 2009 Sale was null and void because it violated the 2005 Operating Agreement. At the summary judgment hearing, the bankruptcy court determined that, if the 2005 Operating Agreement was effective, then the 2009 Sale was void. The court held a trial to resolve the factual dispute as to whether the 2005 Operating Agreement was effective. After trial, the court concluded that the agreement

6

was effective, and that the purported transfer was null and void because it violated the agreement. The district court affirmed the bankruptcy court's ruling invalidating the 2009 Sale.

## II.

On appeal, Han argues that: (1) the Trustee lacks standing; (2) the 2005 Operating Agreement never became effective and therefore did not govern the 2009 Sale; and (3) even if the 2005 Operating Agreement governed, the 2009 Sale was not null and void.

In reviewing a bankruptcy order, "we apply the same standard of review that the district court applied when it reviewed the bankruptcy court's decision." In re Jenkins, 784 F.3d 230, 234 (4th Cir. 2015) (quoting In re Nieves, 648 F.3d 232, 237 (4th Cir. 2011) (per curiam)). We thus review the bankruptcy court's factual findings for clear error and legal conclusions of both the bankruptcy court and district court de novo. Id.

### A.

We begin with the threshold issue of standing. Han contends that the Trustee does not have standing to bring the instant claim because the Debtors, in whose shoes the Trustee stands, did not have a direct interest in Grand Centreville, but only an interest in the entities that controlled Grand

7

Centreville--Grand Equity and Grand Development. Thus, according to Han, the Trustee is impermissibly attempting to assert the rights of corporate entities rather than rights belonging to the Debtors. This argument is without merit.

A Chapter 11 Trustee has the power to assert the rights of the debtor and creditors, as defined by state law. Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 135 (4th Cir. 1988). Under Virginia law, the property of canceled LLCs "pass[es] automatically" to the managers, members, or holders of interest, who act as trustees in liquidation to distribute the company's assets after the LLC is wound up and all liabilities and obligations are satisfied. Va. Code § 13.1-1050.2(c).

When Grand Development and Grand Equity were canceled in 2008, their interests in Grand Centreville were held in trust by Mr. Kang "as trustee[] in liquidation" for himself and Mrs. Kang, the ultimate owners. Id. Because there is no evidence to suggest that the LLCs were anything but pass-through entities with no business to wind up or outstanding debts to pay, the interests they held in Grand Centreville passed directly to the Debtors. Stepping into the Debtors' shoes, the Trustee therefore has standing to pursue its claim that the 2009 Sale is null and void.

8

Han next argues that because Ronnie Kim never agreed to the 2005 Operating Agreement, it never became effective.  See Va. Code § 13.1-1023(B)(1) (providing that "[a]n operating agreement must initially be agreed to by all of the members").  There is no basis for this argument.

It is true that the 2005 Operating Agreement lists Ronnie Kim, together with Grand Formation and Grand Equity, as a member of Grand Centreville.  J.A. 1345.  However, membership in an LLC is a matter of assent, and a person cannot become a member without agreeing to do so.  Cf. Broyhill v. DeLuca (In re DeLuca), 194 B.R. 65 (Bankr. E.D. Va. 1996).[4]  Ronnie Kim testified that he had never been a member of Grand Centreville, and had not seen the 2005 Operating Agreement prior to preparing for his deposition, nor even heard of Grand Centreville before

---

[4] Han argues that Broyhill does not support the district court's conclusion that "a member [must] have knowledge of and consent[] to the membership interest."  Appellant's Br. at 11.  Although Broyhill does not directly touch on the issue in the present case, the court there did conclude that an entity became a member of an LLC through the assent of all its members.  And Han even concedes that she "is not suggesting that Mr. Kim be made an 'involuntary member.'"  Appellant's Br. at 12.  Her argument that the remaining members' assent to the 2005 Operating Agreement is meaningless without Kim's inclusion is belied by the remaining members' conduct--they never sought Kim's input on decisionmaking or his consent to the 2009 Sale.  Simply put, there is no indication they actually intended for Kim to be a true member.  Cf. In re Williams, 455 B.R. 485, 496 (Bankr. E.D. Va. 2011).

then.  J.A. 1757-64; J.A. 1823-27.  And no testimony or other evidence suggested otherwise.  Thus, because Kim was never a member of Grand Centreville, the 2005 Operating Agreement became effective without his agreement.[5]

C.

Finally, Han argues that the lower court erred by holding that the transfer was null and void.  She contends that violations of the 2005 Operating Agreement only rendered the transaction voidable, which would allow her to raise equitable defenses such as estoppel.  See Richard L. Deal & Assoc., Inc. v. Commonwealth, 299 S.E.2d 346, 349 (Va. 1983).  In particular, she argues that an operating agreement is merely an agreement among its members, and that just as the Debtors could be estopped from denying they had the power to consummate the 2009 Sale, so too can the Trustee.  We disagree.

Under Virginia law, an operating agreement binds the parties to the agreement.  Mission Residential, LLC v. Triple Net Props., LLC, 654 S.E.2d 888, 891 (Va. 2008).  And the members can, through the operating agreement, "provide rights to any person, including a person who is not a party to the

---

[5] By not arguing it on appeal, Han waived any contention that the 2005 Operating Agreement was not effective because of a missing signature page for Grand Equity.  We therefore do not address that argument further.

10

operating agreement, to the extent set forth in the operating agreement." Va. Code § 13.1-1023(A)(1).

Here, Han concedes that the restrictions in the 2005 Operating Agreement were designed to benefit the lender. Appellant's Br. at 13. She also concedes that "[t]he transfer would have violated the transfer of control provisions contained in the 2005 operating agreement." Id. And yet, without citing any authority, she argues that the violations would only give the lender the right to void the 2009 Sale, not render it null and void. Although few courts appear to have spoken on the issue, the courts that have addressed it conclude that actions that violate an LLC's operating agreement are null and void. See, e.g., Kapila v. Deutsche Bank AG (In re Louis J. Pearlman Enters., Inc.), 398 B.R. 59, 65 (Bankr. M.D. Fla. 2008) ("The purported transfer is void and of no effect pursuant to the Operating Agreement.").

We are likewise persuaded that such actions are without legal effect because they exceed the scope of authority conferred by the operating agreement.[6]  As the district court

---

[6] Han's reliance upon News-Register Co. v. Rockingham Pub. Co., 86 S.E. 874 (Va. 1915), to argue otherwise is misplaced. First, News-Register Co. pre-dated the existence of LLCs, and concerned two corporations that entered into a partnership agreement. Second, as the court there stated, "[t]he main, indeed the sole, contention in this case centers upon the question whether, under the laws of Virginia, two corporations
(Continued)

11

recognized, operating agreements define the authority of LLCs, and companies that engage in transactions with an LLC appropriately look to these agreements during the due-diligence process to determine such authority. Actions taken outside the authority conferred by the operating agreement are thus <u>ultra vires</u> and without legal effect.[7] Because there is no dispute that the 2009 Sale violated the 2005 Operating Agreement, it is null and void.

---

can form a partnership." <u>Id.</u> at 876. The court concluded that the two corporations could validly form a partnership, and only suggested in dicta that a corporate actor could be estopped from arguing that it was without power to enter into such an agreement after amending its corporate charter to expressly allow it to do so and undertaking the transaction in good faith. Among the other factors making the case inapposite, the transaction here was not undertaken in good faith, but expressly designed to obscure the fact that it violated the 2005 Operating Agreement. <u>See</u> J.A. 1728.

[7] As the Trustee argues, the Fifth Circuit's decision in <u>Kinwood Capital Group, LLC v. BankPlus (In re Northlake Dev., LLC)</u>, 643 F.3d 448 (5th Cir. 2011), further supports this conclusion. In <u>BankPlus</u>, a minority member of an LLC purported to transfer the LLC's property to another company that he created, without any authority under the LLC's operating agreement. He then used that property as collateral to obtain a loan for his new company, and the bank sought to retain the property after the new company filed for bankruptcy. Relying on an opinion from the Mississippi Supreme Court, the Fifth Circuit concluded that the purported transfer was void and of no legal effect because the minority member, as an agent of the LLC, acted without authority. <u>Id.</u> at 451.

12

III.

For the foregoing reasons, we affirm the order of the district court.[8]

AFFIRMED

---

[8] We dispensed with oral argument because the facts and legal conclusions are adequately presented in the materials before this court and argument would not aid in the decisional process.