# Wytheville

## Maurice D. Adams, et als. v. United States Distributing Corporation, et als.

June 6, 1945.

Record No. 2934.

Present, All the Justices.

The opinion states the case.

*John J. Wicker, Jr., Seymour M. Heilbron, George M. Jaffin* and *Charles Winkelman*, for the appellants.

*R. Grayson Dashiell, William W. Crump, James V. Hayes, J. Leo Coupe* and *Donovan, Leisure, Newton & Lumbard*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

This appeal involves the rights of certain holders of preferred stock in United States Distributing Corporation, a Virginia corporation, with its principal office in the city of

Richmond, who dissented from the merger of that corporation with The Pittston Company, a Delaware corporation, under the name of the latter. The merger was approved by the respective agencies of the two States on December 31, 1942, with the result that the merged corporation is now duly incorporated in both States.

Prior to the merger the United States Distributing Corporation had outstanding 99,915½ shares of 7% cumulative convertible preferred stock, of the par value of $100 per share, and 401,876½ shares of common stock of the par value of $5.00 per share. The Pittston Company owned 62,879 shares of this preferred stock, or approximately 63% thereof, and 360,713 shares of the common stock, or approximately 90% thereof. As of the date of the merger, the cumulative unpaid dividends on the preferred stock of United States Distributing Corporation amounted to a total of $84 per share.

It was provided both in the charter of United States Distributing Corporation and in each preferred stock certificate, that "in case of the liquidation or dissolution of this corporation, or a distribution of its assets, except by payment of dividends, the assets of this corporation shall first be applied toward paying to the holders of the preferred stock an amount equal to the par value of their respective holdings of such preferred stock, plus all accrued and unpaid dividends thereon, * * * ."

Under the terms of the merger agreement the holders of the preferred stock of United States Distributing Corporation, other than The Pittston Company, were to receive in exchange for each preferred share of United States Distributing Corporation stock held by him, and unpaid dividends thereon, one share of "Class A Preference" stock and one share of common stock of the continuing corporation. The "Class A Preference" stock provided for a cumulative dividend of $5.00 per year per share, and other rights which need not be here detailed.

Between the date of the merger and March 13, 1943, the

appellants, who together own a total of 1,337 shares of preferred stock in United States Distributing Corporation, in various amounts, gave notice to The Pittston Company, the merged corporation, that they elected to dissent from the merger and to enforce their appraisal rights under section 3822 of the Code of Virginia. Various other like notices of dissent were received from other preferred stockholders.

On June 2, 1943, the appellants filed their bill in the Law and Equity Court of the city of Richmond against United States Distributing Corporation, The Pittston Company, and the officers and directors of the latter company. After setting out the above facts, the bill alleged that the merger "constituted a dissolution and liquidation of Distributing, requiring a distribution of its assets"; that under the terms of the charter of that company, and its certificates of preferred stock, each of the dissenting stockholders was entitled to be paid the $100 par value for each share of stock, plus accumulated dividends of $84 per share, with interest thereon from the date of the merger; and that this was "a contractual right, fixed and vested," of which the dissenting stockholders could not be deprived by the merger. It was also alleged that at the time of the merger, United States Distributing Corporation had sufficient assets to pay these claims of the dissenting preferred stockholders in full, but that pursuant to the merger agreement these assets had been transferred and delivered to The Pittston Company, with the result that the latter became liable for and was bound to pay the dissenting stockholders the amount of their respective claims.

The bill prayed, among other things, that the rights of the dissenting holders of preferred stock of United States Distributing Corporation "be ascertained, determined and fixed"; that they be paid the amounts alleged to be due them; and that The Pittston Company be enjoined and restrained from paying any dividends on any classes of its stock, or from using any of the assets acquired by it from United States Distributing Corporation, as a result of the merger, unless and until the claims of the appellants had been satisfied.

At the time the bill was filed the plaintiffs (the appellants here) gave notice of an application to the lower court, on June 12, 1943, for a preliminary injunction in accordance with the prayer of the bill. In the meantime, on June 9, The Pittston Company had filed a petition in the Chancery Court of the city of Richmond, against the appellants and others, under the provisions of Code, section 3822, as amended, asking for the ascertainment of the "fair cash value" of the preferred stock of United States Distributing Corporation owned by those stockholders who dissented from the merger. The petition also prayed that the appellants be enjoined from further prosecuting the present suit in the Law and Equity Court of the city of Richmond.

When the appellants' application for a preliminary injunction in the present proceeding came on to be heard in the Law and Equity Court of the city of Richmond, The Pittston Company entered a special appearance and objected to the proceeding on the ground that the remedy provided by Code, section 3822, was exclusive, that the appellants were not entitled to equitable relief, and that since the principal office of United States Distributing Corporation was in the city of Richmond, under the express terms of that section the Chancery Court of the city of Richmond had sole jurisdiction of the ascertainment of the value of their stock.

The Law and Equity Court of the city of Richmond sustained the position of the appellants that the appraisal statute (Code, section 3822) did not provide an exclusive remedy and that since that court had first acquired jurisdiction of the subject-matter, the appraisal proceeding which The Pittston Company had instituted in the Chancery Court of the city of Richmond should be stayed. Thereupon The Pittston Company filed a demurrer to the bill which was overruled.

The Pittston Company then filed its answer and cross-bill in which it alleged that the merger did not effect a dissolution of United States Distributing Corporation, and

hence the charter provisions upon which the appellants relied for the recovery of the par value of their preferred stock, plus accrued and unpaid dividends, were inoperative. It again asserted the defense that the appellants' sole remedy was to recover the fair cash value of their stock by an appropriate appraisal proceeding in the Chancery Court of the city of Richmond under the provisions of Code, section 3822, and that the Law and Equity Court of the city of Richmond had no jurisdiction of the cause of action.

The appellants having answered the cross-bill, the matter came on to be heard on the pleadings and exhibits therewith filed. The lower court entered a decree adjudicating the principles of the cause, from which the present appeal has been taken. In substance, the decree provided that as a result of the merger of the two corporations the appellants, as dissenting stockholders, had the right to institute the present suit and share in the net assets of United States Distributing Corporation pro rata with the other preferred stockholders, including those who assented to as well as those who dissented from the merger, as of December 21, 1942; that the appellants were entitled to receive the par value of their stock, plus accrued and unpaid dividends thereon, provided such recovery did not exceed the "actual value" of such stock, "to-wit the said proportionable share of such stock in the net assets of United States Distributing Corporation as of said date"; and that unless the appellants should establish facts to estop The Pittston Company from denying that the value of their stock is less than par, plus accrued and unpaid dividends, their recovery should be limited to such "actual value." The cause was referred to a commissioner in chancery for the purpose of inquiring into and ascertaining such matters as were necessary to carry into effect the conclusions of the court.

The dissenting preferred stockholders, the plaintiffs below, have appealed from this decree. Their contention is that they are entitled to recover, what they term, the "full contractual value" of their stock, namely, the par value of $100

per share, plus $84 of accumulated and unpaid dividends thereon, and interest from the date of the merger, and that the lower court erred in limiting their amount of recovery to the "actual value" of their stock as fixed by the net assets of United States Distributing Corporation at the date of the merger, available to all preferred stockholders, including both those who assented to and those who dissented from the merger.

The Pittston Company assigns as cross-error the action of the lower court in not dismissing the present suit in equity and in not holding that the appellants' sole remedy was by a proceeding in the Chancery Court of the city of Richmond, under Code, section 3822, for the appraisal and recovery of the "fair cash value" of their stock.

Since the cross-assignment of error goes to the jurisdiction of the lower court we shall dispose of that first.

Briefly stated, the appellants' position is, that the merger of United States Distributing Corporation into The Pittston Company resulted in the dissolution of the former corporation, which gave to the dissenting stockholders their choice of three courses of action:

(1) They could join in the merger by exchanging their stock for shares in the continuing corporation.

(2) They could proceed under Code, section 3822, to recover the "fair cash value" of their stock.

(3) They could insist that the continuing corporation, The Pittston Company, pay to them out of the assets it received from the United States Distributing Corporation the par value of their stock, plus accrued dividends thereon, provided The Pittston Company received from the United States Distributing Corporation sufficient assets for such purpose.

It is the position of The Pittston Company that Code, section 3822, as it stood at the time of the merger, gave the appellants the choice of only the first two alternatives, contended for by them, but that it left to them no right to the third course which they are attempting to assert in the present proceeding.

The first Virginia appraisal statute (the predecessor of Code, section 3822) was adopted in 1903.[1] That statute provided that if any stockholder signified his dissent in writing within three months after the merger was approved, "he shall receive from such merged or consolidated corporation the fair cash value of his stock as of the day before the vote" for the merger was cast. It then provided that if the fair cash value be not agreed upon by the stockholders and the corporation, it "shall be appraised by three disinterested persons" appointed by the circuit judge of the county or corporation wherein the principal office of the corporation of such dissatisfied stockholder is located. No specific powers were conferred upon the appraisers. In the event of dissatisfaction with the award, only the dissenters were empowered to petition the court to set it aside. It could only remit it to a second set of appraisers "whose finding thereon shall be final" and automatically would become the judgment of the court, subject only to the right of either party to present a petition for a writ of error to the Supreme Court of Appeals of Virginia.

As it was then written, there was no provision in the statute, either express or implied, that the statutory remedy of appraisal was the only alternative open to a stockholder who did not take advantage of the exchange of stock as afforded in the merger agreement.

In *Winfree v. Riverside Cotton Mills*, 113 Va. 717, 724, 75 S. E. 309, this court held that the summary remedy provided by this statute, by which a dissenting stockholder could secure the fair cash value of his stock as of the day before the vote for the merger was cast, was not exclusive, and that the stockholder was not bound to follow that procedure. We there said:

"While this summary remedy is given by the statute, and the appellant might have pursued it, he was not bound to do so. Although the consolidating statute took away from him

[1] Acts of Assembly, Ex. Sess., 1902-3-4, ch. 270, pp. 437, 476-479, ch. V, section 41.

the right to defeat the consolidation by refusing to assent to it, it did not take away from him the right to refuse to surrender his stock for stock in the new corporation, or to refuse to take anything for it less than its actual value at the date of the consolidation. (Citing authorities.)

"To ascertain that value, under the allegations of the bill, investigations into the condition of the Riverside Cotton Mills may have to be made, and accounts taken, which could be much better done in a court of equity than in a court of law. The demurrer to the bill, on the ground that the appellant had a complete and adequate remedy at law, was therefore properly overruled."

This is all that was said on the subject. But the inference, we think, to be drawn from what was said is that the court was of opinion that the machinery provided by the appraisal statute, as then written, was not so well adapted as that of a court of equity to arrive at the actual value of a dissenter's shares, and that hence the statutory remedy was not complete and adequate.

In 1922 the appraisal statute was radically amended.[2] It provided that any dissatisfied stockholder, by giving notice of his dissent within three months, "shall be entitled to receive from such consolidated or merged corporation the fair cash value of his stock as of the day before the vote for the agreement of consolidation or merger of his corporation was so cast as aforesaid, which fair cash value, if not agreed on between such dissenting stockholder and the consolidated or merged corporation, shall be determined in the manner hereinafter provided".

The amended statute made provision for the appointment of appraisers by a certain court or courts of the county or city wherein the principal office of the corporation of such dissenting stockholder is located. The Chancery Court of the city of Richmond was given exclusive jurisdiction of the matter if the principal office of the corporation be located in that city.

[2] Acts 1922, ch. 380, pp. 625, 632-634.

The duties and powers of the appraisers were greatly extended. They were given the right to administer oaths, take evidence, and conduct their proceedings "either within or without the State of Virginia." The courts authorized to appoint the appraisers were empowered to order the production before the appraisers of such books and records as might be necessary. or desirable in determining the fair cash value. The appraisers were required to report to the court, in writing, and to submit therewith the evidence produced before them during their investigation. Upon return of the appraisers' report the court was given the authority to confirm it, or set it aside and "proceed to ascertain the fair cash value of the stock" and enter judgment accordingly. Thus, we think, the inadequacy of the remedy afforded by the former statute, as pointed out in the *Winfree Case*, was cured.

Moreover, the language found in the amended statute, that the fair cash value of the stock "shall be determined in the manner hereinafter provided," indicates, we think, that that method, and none other, is to be followed.

Then, too, the amended statute provides—and no such language appeared in the former statute—that any non-assenting stockholder who "shall fail to signify his dissent by notice in writing served" within three months after the date of the meeting of his corporation, "shall be forever precluded from objecting to the consolidation or merger and shall be deemed to have elected thereby to participate in the agreement or plan of consolidation or merger on the basis therein provided for stockholders of his class, and such stockholder shall not thereafter be entitled to demand or receive the fair cash value of his stock in his corporation, but the rights of such stockholder shall thereafter be confined to participation in the agreement or plan of consolidation or merger, and to the stock of the consolidated or merged corporation to which he may be entitled, and all rights of such stockholder under the stock of the consolidating or merging corporation shall thereupon cease and determine."

■ We are of opinion that these provisions evidence a clear legislative intent, not present in the 1903 statute, to give every stockholder of a merging corporation an election either to dissent and secure in the prescribed manner the fair cash value of his stock, or, if he fails to dissent, to be bound by the terms of the merger.

There is no language, either express or implied, on which there may be based the third alternative remedy which the appellants have sought to invoke in this proceeding.

■ Nor can the right to such remedy be based on anything which was said in *Winfree* v. *Riverside Cotton Mills, supra.* While the opinion states that the dissenting stockholder, in an independent suit in equity, is entitled to receive not less than the "actual value" of his shares, that term is practically synonymous with "fair cash value." Certainly, there is no suggestion that the dissenter may recover what the appellants here call the "contractual value" of their shares as distinguished from the "fair cash value" or the "actual value." See *Weiss* v. *Routh, post.*

To adopt the contention of the appellants and hold that the remedy afforded by the statute is merely cumulative and not exclusive would lead to confusion and to inequitable results among various dissenting stockholders, even where the identical corporation is involved and the sole question is that of the value of the dissenters' shares. For example, in the case at bar, those preferred stockholders, other than the appellants, who dissented from the merger and pursued the statutory remedy for the appraisal of the "fair cash value" of their stock, in the Chancery Court of the city of Richmond, would have such value determined by the appraisers appointed by that court and subject to its approval, while the appellants in the present proceeding would have the value of their stock determined by a commissioner in chancery, subject to the approval of the Law and Equity Court of the city of Richmond. Unless the two tribunals worked in close harmony they might arrive at entirely dif-

ferent results, although the ultimate purpose is precisely the same.

But that is not all. If the appellants are sound in their view, then they would be free to pursue their equitable remedy in any court, State or Federal, in which they might acquire jurisdiction of the parties. Under this theory the dissenting stockholders could institute actions for the value of their shares in State and Federal courts throughout the country, provided, only, that proper service of process could be effected.

If such a multiplicity of suits could be instituted, and if all such courts had equal and concurrent jurisdiction, the inescapable result would be that instead of all dissenters from a particular merger receiving equal treatment, those who elected to pursue different remedies, or like remedies in different courts, would inevitably find themselves with widely varying judgments in their favor. See *Weiss* v. *Routh, post.*

It is inconceivable, we think, that the legislature ever intended that dissenting stockholders of the same corporation and of the same class should receive different values for their shares. On the contrary, we think the design of the Virginia statute is to assure to the dissenting stockholder that he will be fully compensated for the value of that of which he has been deprived by the merger, and no more.

In *Miller* v. *Canton Motor Coach*, 58 Ohio App. 94, 16 N. E. (2d) 486, 487, it was held that the term "fair cash value" in the Ohio appraisal statute means the intrinsic worth of the dissenter's stock, which is to be arrived at after an appraisal of all the elements of value. In our opinion the same applies to the Virginia statute.

The exhaustive briefs filed on behalf of the respective parties have cited a number of cases from other jurisdictions dealing with the question whether similar statutes furnish an exclusive remedy to a dissenting stockholder. It would serve no good purpose to undertake to review and distinguish these cases, for, after all, the rights of the parties before us

must turn upon the interpretation of the Virginia statute. Suffice it to say, that the weight of authority is to the effect that unless the corporate merger be tainted with fraud or illegality—and there is no such allegation in the case at bar—the dissenting stockholder must pursue the remedy prescribed by the appraisal statute.

The appellants contend that in the recent case of *Craddock-Terry Co.* v. *Powell*, 181 Va. 417, 25 S. E. (2d) 363, we reiterated the holding in *Winfree* v. *Riverside Cotton Mills, supra*, that Code, section 3822, afforded the dissenting stockholder merely a cumulative but not an exclusive remedy to recover the value of his stock. In that case we dealt with the rights of a preferred stockholder who dissented from the sale by the corporation which issued his stock, of all of its assets to another corporation. Code, section 3820a, as amended, provides that the rights of a stockholder of the vendor corporation who dissents from such sale "shall be the same *mutatis mutandis* as that of a stockholder of a consolidated or merged corporation, who shall not have given his consent to such consolidation or merger and who shall be dissatisfied therewith, and the same procedure *mutatis mutandis* to ascertain the fair cash value of his stock shall be had, as now or may be hereafter provided by statute in case of such stockholder of a merged or consolidated corporation *and/or as now exists under the general law; * * * .*" (Italics supplied.)

We held (181 Va., at page 443, 25 S. E. (2d), at page 374) that the words "and/or as now exists under the general law," as well as other expressions in the section, evinced a legislative intent that the statutory remedy afforded to a stockholder who dissented from such sale was not to be exclusive.

There are no such similar expressions in Code, section 3822, as amended, which were designed to preserve to the dissenting stockholder in a merging corporation his original equitable remedy.

Our attention has been directed to the decision in *Weiss*

v. *Atkins*, 52 F. Supp. 418. This was an action brought by the holders of common stock of United States Distributing Corporation against that corporation, The Pittston Company, and certain of the directors of both corporations, for damages claimed to have been sustained by the plaintiffs as the result of an alleged conspiracy to deprive them of the value of their stock in the merger of the two corporations. The defendants moved for a summary judgment on the ground that the plaintiffs were precluded from bringing the action by the Virginia statute, Code, section 3822. In denying the defendants' motion, the court held that the remedy afforded the stockholders under Code, section 3822, as amended, was cumulative and not exclusive, relying upon the holding in *Winfree* v. *Riverside Cotton Mills*, *supra*. But in so deciding, we think the learned court failed to correctly appraise the value and effect of the 1922 amendment to the Virginia statute. With deference, therefore, we can not agree with that court's interpretation of our statute.

Later, on the merits, the District Court held that the common stock of United States Distributing Corporation had no fair cash value at the time of the merger; that the plaintiffs, therefore, had suffered no damage, and hence the suit was dismissed. The plaintiffs appealed. In its opinion (*Weiss* v. *Routh*, 149 F. (2d) 193), rendered since the present case was argued before us, the Circuit Court of Appeals found it unnecessary to decide whether a dissenting stockholder of a Virginia corporation had been deprived by the provisions of Code, section 3822, of his equitable remedy to recover the value of his shares. The court observed that "the remedy of appraisal provided by section 3822 is in substance the same although the procedure is different," as that afforded by a suit in equity. Assuming, it said, that the statutory remedy was merely cumulative, the court pointed out the "onerous added burden upon the corporation to subject it to suit in any foreign forum where a shareholder could serve it; and, moreover, there would be no uniformity in the recoveries, and therefore no equality of treatment

between the dissentients." It concluded that as a "means of insuring equality" of treatment for all dissenting stockholders, "the court of a foreign forum has adequate ground at least for saying that it is the policy of Virginia to keep the ascertainment of the value of minority shares within its borders, even though dissenters are given alternative remedies." Therefore, "because the District Court should have refused to entertain the action," the complaint was dismissed.

The appellants argue that the effect of the merger and the application of the terms of the appraisal statute is to violate the contract which they had with the corporation, as embodied in its charter and in the provisions of the certificates of stock held by them. There are two answers to this contention.

In the first place, it is elementary that the general corporation law of the State, in force at the time of the incorporation, is just as much a part of the contract between the corporation and its stockholders as are the documents upon which the appellants rely. *Knights of Pythias* v. *Weller*, 93 Va. 605, 613, 25 S. E. 891; *Winfree* v. *Riverside Cotton Mills, supra* (113 Va., at pages 720-721); *Kaplan* v. *Block*, 183 Va. 327, 333-4, 31 S. E. (2d) 893, 896; Fletcher Cyclopedia Corporations, Perm. Ed., Vol. 7, section 3635, pp. 759-763; *Idem*, Vol. 4, section 1485, pp. 155-6.

Indeed, Code, section 3841, provides: "The general statutes of this State applicable to corporations shall be a part of the charter of every corporation formed under the laws of this State, except so far as the same are inapplicable or inappropriate to the objects of such corporation."

Therefore, when the appellants invested in the shares of United States Distributing Corporation, they did so with the full knowledge of the fact that the corporation, chartered under the General Corporation Law of Virginia, in 1919, might, under the laws of this State, merge with another corporation, in the manner and with the effect upon their investment specified in the statute.

In the next place, the appellants' claim is predicated upon

the theory that the merger of United States Distributing Corporation into The Pittston Company effected a dissolution of the former corporation and thus made operative the charter provision that, "in case of the liquidation or dissolution of this corporation, or a distribution of its assets," the preferred stockholders were to be paid the par value of their stock, plus accrued dividends.

Whether a merger results in the dissolution of the constituent corporations depends upon the terms and intent of the statute involved. 13 Am. Jur., Corporations, section 1195, pp. 1097-8; Fletcher Cyclopedia Corporations, Perm. Ed., Vol. 15, section 7076, pp. 74-75.

It is well settled in this State that the merger of two corporations does not end the existence of either, but continues the existence of both in the merged corporation.

Code, section 3823, provides: "Upon the perfecting, as aforesaid, of the said merger or consolidation, the several corporations parties thereto shall be deemed and taken as one corporation," and that all of the property "and franchises of each of said corporations," as well as all property, real and personal, become the property of the new corporation, and "all debts, liabilities, and duties of either of said companies shall thenceforth attach to said new corporation" and shall be enforceable against it.

See also, *Langhorne* v. *Richmond Ry. Co.*, 91 Va. 369, 375, 22 S. E. 159; *American Ry. Exp. Co.* v. *Downing*, 132 Va. 139, 151-2, 111 S. E. 265; *American Ry. Exp. Co.* v. *Fleishman, etc., Co.*, 149 Va. 200, 217, 141 S. E. 253; *Early* v. *Southgate Corp.*, 136 F. (2d) 217, 220-1.

Nothing we said in *Craddock-Terry Co.* v. *Powell, supra,* supports the appellants' contention that a merger effects a dissolution of either of the constituent corporations. There we held that the sale by a corporation of all of its assets and the subsequent distribution of the proceeds to its stockholders, followed by the abandonment and later the forfeiture of its charter, all pursuant to plan, constituted a dissolution within the meaning of its charter.

In *Windhurst* v. *Central Leather Co.*, 105 N. J. Eq. 621, 149 A. 36, 37-38 (affirmed, 107 N. J. Eq. 528, 153 A. 402, 403), it was held that the merger of two corporations did not work a "dissolution or liquidation" of one of the constituent corporations within the meaning of the preferred stock clause. We prefer the reasoning in that case rather than that in *Petry* v. *Harwood Elec. Co.*, 280 Pa. 142, 124 A. 302, 303, 33 A. L. R. 1249, relied on by the appellants, in which the opposite conclusion was reached.

On the whole, we are of opinion that on the cross-assignment of error the bill of complaint must be dismissed without prejudice to the appellants to pursue, in the proper court, their remedy for the fair cash value of their stock pursuant to the provisions of Code, section 3822, as amended. It is so ordered.

*Reversed and dismissed.*