Frank J. Opelka et al., Appellants, v. Quincy Memorial Bridge Company et al., Appellees.
John W. Kerkering et al., Appellants, v. Quincy Memorial Bridge Company et al., Appellees.

Gen. No. 9,588.

404

Opinion filed October 29, 1948. Released for publication November 24, 1948.

INGHRAM & INGHRAM, RICHARD F. SCHOLZ, all of Quincy, and WILLIAM RUFUS MORGAN, of Chicago, for appellants.

LANCASTER & NICHOLS and HENRY W. POLLOCK, all of Quincy, for appellees.

MR. JUSTICE WHEAT delivered the opinion of the court.

This equity action is brought by certain holders of preferred stock of Quincy Memorial Bridge Company assailing an agreement among the company, the City of Quincy, and the State of Illinois, relating to a sale of the company's bridge, and the distribution of the proceeds. This appeal follows dismissal of the complaint on motion.

The complaint charges that plaintiffs appellants are the owners of 261 shares of preferred stock of Quincy Memorial Bridge Company, which was incorporated June 19, 1928, for the purpose of constructing and operating a toll bridge across the Mississippi River at Quincy, Illinois, to a point opposite in Marion county, Missouri; that the authorized capital stock is 4,000 shares of preferred stock of the par value of $100 each, and 10,000 shares of common stock with no par value; that the preferred stock was preferred as to assets at its par value of $100 per share and as to dividends to the extent of 6½ per cent per annum, cumulative after June 30, 1930; that the 4,000 shares of preferred stock were offered and sold to the public; that the company constructed the bridge, which was open to traffic

June 13, 1930, and operated it as a toll bridge until September 12, 1945.

The complaint further charged that said certificates of preferred stock all provided as follows:

"The holders of the preferred stock shall be entitled to receive from the surplus of net profits of the corporation, dividends at the rate of six and one-half per cent (6½%) per annum, payable when and as declared by the Board of Directors.

"The dividends on the preferred stock shall be cumulative after the opening of the bridge to traffic but not later than June 30, 1930, so that if at any period after that time the full amount of such dividends accrued remains unpaid the arrears thereof shall be paid, or funds sufficient thereto set aside before any dividend is declared on the common stock. . . .

"Upon the voluntary or involuntary dissolution of the corporation, the holders of the preferred stock shall be entitled to receive and shall be paid full par value of their share and any and all dividends accrued and unpaid thereof out of the assets of the corporation, and the balance, if any, shall be paid to the holders of the common stock."

that no dividends have ever been paid on such preferred stock and plaintiffs' stock has not been redeemed by the company under the terms and provisions of the stock certificates; that Ordinance No. 737 of the City of Quincy, referred to in the stock certificates, assigned the franchise granted by Congress to the City of Quincy, under which the bridge was built, to the company, with a reservation of the right to "recapture" the bridge under certain terms and conditions, and provided that "the purchase money to be used first for the retirement of bonds outstanding and interest thereon and next for the retirement of preferred stock and accumulated dividends thereon, and thereafter the purchase of the common stock."

The complaint then alleged that on September 4, 1945, a special meeting of the board of directors of the company was held, at which meeting a resolution was adopted recommending to the stockholders that all of the assets of the company be sold upon the terms and conditions set out in a so-called tri-party agreement, a copy of which is attached to the complaint; that thereafter, and on September 4, 1945, pursuant to notice, a special meeting of the stockholders was held, at which meeting a sale of all of the assets of the company was authorized upon the terms and conditions set forth in said tri-party agreement, at which time the stockholders present in person and by proxy authorized the execution of such agreement; that none of the plaintiffs were present at such meeting in person or by proxy and none voted in favor of the sale of the assets or the execution of said agreement, in person or by proxy; that thereafter, on September 4, 1945, the board of directors purported and attempted to authorize the company officers to execute the tri-party agreement on behalf of the corporation, and to execute all deeds and other papers necessary for carrying out said agreement; that said agreement was executed by all of the parties thereto; that in violation of the provisions of the agreement under which the City of Quincy was to acquire the outstanding preferred stock, and with full knowledge on the part of the company and the city that plaintiffs' outstanding preferred stock had not been acquired by the city, the company transferred and conveyed to the city all of the company assets, and the city transferred and conveyed to the State of Illinois all real estate and the portion of the bridge in the State of Illinois; that the city retains title to that part of the bridge in the State of Missouri.

It is further charged in the complaint that all holders of common stock who have not voluntarily surrendered their certificates without consideration have been paid $5 a share; that no payments have been

made to plaintiffs for the par value of $100 per share of their preferred stock nor of accumulated dividends which, at the time of filing the complaint, amounted to $104.99 per share, but that defendants appellees have offered to pay plaintiffs, under the provisions of the tri-party agreement, only the sum of $150 per share for the surrender and cancellation of such stock; that plaintiffs have demanded in writing the payment to them of $204.99 per share; that plaintiffs have a valid contract with the company under which the holders of common stock have no right to receive any payment until full payment has been made of the par value and accumulated dividends on preferred stock.

It is further alleged in said complaint that the tri-party agreement is in violation of plaintiffs' contracts with reference to preferred stock and that Bridge Company and City of Quincy fraudulently executed and entered into said tri-party agreement in violation of plaintiffs' rights and that the defendants appellees fraudulently conspired and attempted to defraud plaintiffs of their rights by attempting to carry out the terms of said tri-party agreement and attempting to place the assets belonging to Bridge Company and plaintiffs as preferred stockholders beyond the reach of plaintiffs; that defendants appellees have fraudulently violated the terms and provisions of Ordinance No. 737; that defendant City of Quincy illegally and without authority in violation of said tri-party agreement still retains title to the assets of Bridge Company located in the State of Missouri; that there are now sufficient funds on deposit in State Street Bank and Trust Company, earmarked and allocated for the purpose of paying par value and accrued dividends on all of the outstanding preferred stock of Bridge Company but that defendants appellees have refused to use said funds or pay same to plaintiffs; that by reason of said facts defendants appellees have violated the provisions of the constitutions of the State of Illinois

and the United States in that they have deprived and attempted to deprive plaintiffs of their contractual rights and property without due process of law; that although the tri-party agreement is null and void it cannot be effectively rescinded by equity by reason of the fact that the portion of the bridge within the State of Illinois is now in possession and purportedly owned by the State of Illinois; that no recission of said agreement would be effective in giving full restitution or in restoring the status quo since the State of Illinois is immune from suit.

For relief the plaintiffs pray that the funds on deposit with State Street Bank and Trust Company under the terms of the tri-party agreement and all funds and other property of Bridge Company be impressed with a trust for benefit of plaintiffs as preferred stockholders and that plaintiffs have judgment for $204.99 for each share of preferred stock held by plaintiffs.

The defendants appellants, owning 41 shares of preferred stock, filed a counterclaim alleging substantially the same facts and asking for the same relief as in the plaintiffs' complaint.

The defendants appellees filed motions to dismiss the complaint and like motions to dismiss the counterclaims. All of the motions to dismiss were based upon substantially the same grounds, these grounds being briefly stated as follows: (a) No cause of action is stated (b) plaintiffs and counterclaimants have adequate remedy at law (c) the money deposited in State Street Bank and Trust Company pursuant to the tri-party agreement is not the property of Bridge Company but was only deposited for the sole purpose of paying the fair value of shares of stock as fixed and determined under the provisions of section 73 of the Business Corporation Act of the State of Illinois (d) the exclusive and only remedy of the dissenting preferred stockholders is pursuant to the provi-

sions of section 73 of the Business Corporation Act of Illinois (Ill. Rev. Stat. 1947, ch. 32, par. 157.73 [Jones Ill. Stats. Ann. 32.075]) (e) there are no facts shown constituting fraud (f) the allegations of fraud and conspiracy are mere conclusions (g) plaintiffs and counterclaimants are barred from maintaining this proceeding for the reason that there are proceedings pending in the circuit court of Adams county, Illinois, filed by plaintiffs and counterclaimants for the determination of the fair value of the same identical shares of stock under the provisions of section 73 of the Business Corporation Act of Illinois (h) that the alleged cause of action is barred by the provisions of section 73 of the Business Corporation Act of Illinois; that section 73 as well as section 72 of the Business Corporation Act of Illinois which authorized the sale of the assets of a corporation constitute a part of the contract of plaintiffs as preferred stockholders and that none of the preferred stockholders have any remedy except as provided in said section 73 of the Business Corporation Act.

On May 14, 1947, an order was made and entered of record in the trial court finding that the complaint and counterclaims and each of them fail to state an equitable cause of action and sustaining the defendants appellees motions to dismiss both said complaint and said counterclaim, and that the plaintiffs take nothing by their complaint; that the counterclaimants take nothing by their counterclaim and that the defendants appellees go hence without day.

The plaintiffs appellants and defendants appellants elected to stand upon their respective complaints and counterclaims and have prosecuted their appeal to this court.

The first question presented is as to whether or not plaintiffs, having instituted a proceeding to have their stock valued under section 73, are estopped from bring-

ing this suit. Section 73 of the Business Corporation Act (Ill. Rev. Stat. 1947, ch. 32, par. 157.73 [Jones Ill. Stats. Ann. 32.075]) provides as follows:

"In the event that a sale or exchange of all or substantially all of the property and assets of a corporation otherwise than in the usual and regular course of its business, is authorized by a vote of the shareholders of the corporation, any shareholder who shall not have voted in favor thereof, may, within twenty days after the vote was taken, make written demand on the corporation for the payment to him of the fair value of his shares as of the day prior to the date on which the vote was taken authorizing the sale or exchange. . . . Any shareholder failing to make demand within the twenty days period shall be conclusively presumed to have consented to the sale or exchange and shall be bound by the terms thereof.

"If, within forty days after the date on which such vote was taken, the value of such shares is agreed upon . . .

"If within such period of forty days the shareholder and the corporation do not so agree, then the dissenting shareholder may, within sixty days after the expiration of the forty day period, file a petition in any court of competent jurisdiction within the county in which the registered office of the corporation is situated asking for a finding and determination of the fair value of such shares, and shall be entitled to judgment against the corporation for the amount of such fair value as of the day prior to the date on which such vote was taken, together with interest thereon to the date of such judgment. The practice, procedure, and judgment shall be, so far as practicable, the same as that under the eminent domain laws of the State."

As to whether the provisions of section 73 furnish an exclusive remedy, it appears that such is not the case where, as here, charges of fraud and illegality

are involved. This rule seems established by the very cases cited by defendants. (*Adams v. United States Distributing Corp.*, 184 Va. 134, 34 S. E. (2d) 244; *Hubbard v. Jones & Laughlin Steel Corp.*, 42 F. Supp. 432; *Root v. York Corp.*, 56 F. Supp. 288; *Langfelder v. Universal Laboratories, Inc.*, 68 F. Supp. 209; *Wall v. Anaconda Copper Mining Co.*, 216 Fed. 242.) The subject is discussed in Fletcher Cyclopedia Corporations at page 5893, as follows:

"As to this (right to valuation of stock and payment as exclusive remedy) there seems to be some conflict in the decisions. In some cases, this statutory remedy has been held to be exclusive, but in most of the decisions the contrary view is sustained, unless the statute otherwise expressly provides. For instance, according to the latter view, a dissenter may set aside the act of the majority where it is irregular or unauthorized, or is fraudulent, and it was held that minority shareholders by accepting the distributive shares of proceeds of a dissolved company were not estopped to prosecute a suit to recover damages for fraudulent acts in dissolving the company and appropriating its business. But the failure of a stockholder to resort to an appraisal may impair his equities to maintain a stockholders' suit."

In the instant case, the complaint expressly charges fraud and urges the illegality of the sale. Since this case was not heard on the merits, but on motion to strike, the allegations of fraud and acts alleged as constituting fraud, must be taken as true for present purposes. As to plaintiffs being precluded from bringing this suit because of instituting their action under section 73, we believe this contention has no merit. A party may proceed with concurrent remedies where the actions are not inconsistent, and no prejudice results. (*Fleming v. Dillon*, 370 Ill. 325.) It appears that these proceedings for stock valuation under the

statute were begun by plaintiffs as a precautionary measure so that they would not, in the language of section 73, "be conclusively presumed to have consented to the sale" and "bound by the terms thereof." In the case of *Morris v. Columbia Apartments Corp.*, 323 Ill. App. 292, cited by all parties, a stockholder did not proceed under section 73 within twenty days from the stockholders' meeting. An independent suit was dismissed, and the inference appears from the abstracted opinion of the Appellate Court that had plaintiff first complied with section 73, relief might have been obtained in the independent action. It is probable that in a case involving admitted and flagrant fraud on the part of the majority stockholders in the sale of corporate assets, such majority would argue that the minority could not proceed in equity unless proceedings had been started under section 73, as it would be urged that they were "conclusively presumed to have consented to the sale" and "bound by the terms thereof."

Having determined the right of plaintiffs and counterclaimants to seek relief in chancery, it is then necessary to determine if the circuit court erred in dismissing the complaint and counterclaim for failure to state a cause of action.

It is first urged that the contract of sale and distribution is fraudulent *per se* and invalid, because the common stockholders, a majority of whom approved the plan, were to receive five dollars per share of common stock, although the preferred stockholders were not to be paid the full amount of the par value of the preferred stock and accrued dividends.

This position is well taken. If legal sanction is given such a transaction, then in the case of any corporation wherein the common stock is valueless because of arrearage in payment of cumulative dividends on preferred stock, the common stockholders might find a purchaser of the corporate assets, and in exchange

for approval of the sale, obtain cash for the worthless common stock, even though the proceeds of the sale were insufficient to pay preferred stockholders in full the par value plus accumulated dividends of their preferred stock.

In the case of *Keller v. Wilson & Co.,* 21 Del. Ch. 391, 190 Atl. 115, the common stockholders, acting under an amendment which had been passed after the preferred stock had been issued, undertook to modify the rights of the preferred stockholders to their disadvantage. Holding that such modification might affect dividends to accrue in the future but could not alter the vested right to dividends for past years, the Supreme Court of Delaware said:

"The rights of cumulative preferred shareholders to the stipulated dividends accrue to them by virtue of the contract. That right exists and persists. When the necessary corporate action, under the amended statute conferring the power is taken, the status of the shares may be changed, and the right thereafter to claim the dividends as originally stipulated may be cancelled, but the amended statute under the general rule of construction, ought not to have a retroactive effect."

This decision was adhered to a year later in *Consolidated Film Industries v. Johnson,* 22 Del. Ch. 407, 197 Atl. 489, although in that case the corporation had been organized after the statute had been amended. Both of these cases hold that common stockholders may not defeat, for their own profit, the antecedently vested rights of preferred stockholders. The basis of these decisions was that the cancellation of the right to a dividend already accrued is not a mere amendment of the charter but the destruction of a right in the nature of a debt. However, subsequently, a merger which for all practical purposes extinguished unpaid and accrued dividends was approved by the Delaware Supreme

Court in the case of *Federal United Corp. v. Havender*, 24 Del. Ch. 318. It therefore appears that some confusion exists as to the Delaware approach to the subject.

In New York, the courts disapproved of amendments attempting to cancel accrued unpaid dividends. (*Davison v. Parke, Austin & Lipscomb*, 285 N. Y. 500; *Roberts v. Roberts-Wicks Co.;* 184 N. Y. 257.) Later the legislature amended the Corporation Act providing express power to cancel accumulated dividends. (*1943 Stock Corporation Law*, Consol. Laws, c. 59; *McNulty v. W. & J. Sloane*, 54 N. Y. S. [2d] 253.)

In the case of *Tennant v. Epstein*, 356 Ill. 26, the Supreme Court said:

"The preference which preferred stock enjoys over common stock . . . is entirely a matter of contract. The contract is generally set forth in the charter or articles of incorporation, by-laws, or stock certificates."

In the instant case, the complaint charges that the corporate charter as well as the preferred stock certificates, both provided for the payment of par value $100 per share and cumulative dividends of 6½ per cent per annum before the common stockholders were entitled to share in any distribution.

In answer to this, defendants contend, and correctly so, that the contract between the stockholder and the corporation is made up not only of the charter and the stock certificates, but the Corporation Act as well, and that the latter provides for the sale of all of the assets of a corporation and the rights of a dissenting stockholder. Specifically, it is claimed that section 72 of the Act (Ill. Rev. Stat. 1947, ch. 32, par. 157.72 [Jones Ill. Stats. Ann. 32.074]) provides the authorization for the sale in this case. This section is, as to pertinent parts, as follows:

"A sale, lease, exchange, mortgage, pledge, or other disposition of all, or substantially all, the property and assets, with or without the good will, of a corporation, if not made in the usual and regular course of its business, may be made upon such terms and conditions and for such consideration, which may consist, in whole or in part, of money or property, real or personal, including shares of any other corporation, domestic or foreign, as may be authorized in the following manner: . . .

"At such meeting the shareholders may authorize such sale, lease, exchange, mortgage, pledge, or other disposition and fix, or may authorize the board of directors to fix, any or all of the terms and conditions thereof and the consideration to be received by the corporation therefor. Such authorization shall require the affirmative vote of the holders of at least two-thirds of the outstanding shares entitled to vote at such meeting, . . ."

It is noted that this section provides for the sale of corporate assets other than in the regular course of business, but does not prescribe the method of distributing the consideration received. In fact, the latter paragraph indicates, in the use of the following language, that the corporation is to receive the sale price: "At such meeting the shareholders may authorize such sale, lease, exchange, mortgage, pledge, or other disposition and fix, or may authorize the board of directors to fix, any or all of the terms and conditions thereof and the consideration to be received by the corporation therefor." It logically follows that the consideration received by the corporation should be held for or distributed to the stockholders in accordance with their preferential rights as fixed by the charter and stock certificates. It seems to be the rule that approval of the sale of corporate assets does not extend

to approval of a scheme of distribution of the sale price in conflict with the terms of the shareholders' contract as embodied in the charter, stock certificates, and the Corporation Act. In the case of *Geiger v. American Seeding Machine Co.*, 124 Ohio St. 222, 177 N. E. 594, the Court held:

Syllabus—"Section 8623–65, General Code (112 Ohio Laws, p. 35), as it existed prior to July 23, 1929, made provision for sale of all or substantially all the assets of a corporation with the consent of two-thirds of the voting power of the corporation, but neither that section nor any other gave the authority to make distribution of the proceeds of such sale among different classes of stockholders in any manner other than in accordance with the articles of incorporation and the contracts with stockholders as evidences by the terms of stock certificates.

Syllabus—"The sale of the entire assets of a corporation and the distribution of the proceeds of such sale among stockholders are separate matters between separate parties and based upon separate considerations; stockholders of different classes cannot be compelled to give their consent to one as a condition to their concurrence in the other.

Syllabus—"The procedure outlined by Section 8623–72 is an exclusive remedy for minority stockholders in reference to a sale, but as that section stood in May, 1929 (112 Ohio Laws, p. 37), had no application to the distribution of the proceeds of such sale among different classes of stockholders."

The same holding is made in the case of *Craddock-Terry Co. v. Powell*, 181 Va. 417, 25 S. E. (2d) 363. Although this question apparently has not been passed upon by the courts of this State, the same distinction is recognized by the draftsmen of the Act in their authoritative commentary appearing in the Illinois Business Corporation Act Annotated, wherein, with reference to section 72, the following appears:

"No provision, however, is contained in the Act permitting submission of a plan for the distribution among the various groups of shareholders of the shares received as consideration for the sale. *In the absence of unanimous consent, it would seem that the distribution of the consideration received can normally be effected only by following the procedure for voluntary distribution.*"

 Defendants rely upon the case of *Goldman v. Postal Telegraph, Inc.*, 52 F. Supp. 763, to support their argument that the reality of the situation confronting the Bridge Company called for some inducement to be offered common stockholders to secure their favorable vote for the plan. Inferentially, this suggests a new principle in law, *i. e.*, that which would otherwise be illegal in corporate affairs may be validated by the exigency of a given situation. This revolutionary innovation cannot be adopted, as to do so would jeopardize the rights of the holders of preferred stock of all Illinois corporations, and, for all practical purposes, destroy the market for preferred stock in the future. If this policy is to be adopted, it becomes a matter for the legislature and not the courts. However, it is questionable if the *Goldman* case does support defendant's contention. That case involved the question as to whether a sale agreement could be conditioned on the selling corporation procuring an amendment of its charter for the purpose of changing the preferential rights of stockholders. It held that preferred stockholders could not be deprived of any rights without charter amendment. It would seem that in view of the decisions of the courts of other states, had the Illinois Legislature intended to provide a method for cancelling accrued unpaid dividends, it would have expressly so provided. Its failure so to do must be construed as a denial of the power either directly by charter amendment or indirectly, as was here attempted to be done.

It is the view of this court that the complaint and counterclaim stated a cause of action and that the circuit court erred in striking the same. Obviously, no suggestion is made in this opinion as to what should be the result of a hearing on the merits of this case, and particularly as to the possible liability of the defendants City of Quincy and State Street Bank and Trust Company.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*