## Richmond

GREAT AMERICAN INSURANCE COMPANY v. COMMONWEALTH OF VIRGINIA.

November 28, 1955.

Record No. 4430.

Present, All the Justices.

The opinion states the case.

*Denny, Valentine & Davenport* and *Claude D. Minor,* for the appellant.

*J. Lindsay Almond, Jr., Attorney General* and *Clarence F. Hicks, Assistant Attorney General,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

This case involves an appeal of right from an order of the State Corporation Commission denying Great American Insurance Company's application for a correction of the assessment of taxes for the year 1954 and refusing the requested refund of taxes paid.

The assessment complained of was made pursuant to Chapter 11, Title 58, § 58-486 *ff.,* and Article 5, Chapter 1, Title 38.1, § 38.1-44, as amended, 1950 Code of Virginia.

During the calendar year 1953 and for a number of years prior thereto the Great American Insurance Company (appellant), and the American Alliance Insurance Company, both New York corporations, were licensed by and did business in Virginia. On December 31, 1953, the two companies merged, retaining the name Great American Insurance Company.

The commission computed the amount of appellant's license tax for 1954 on the basis of premiums collected in the State by both companies in 1953.

Appellant contends that only the premiums collected by it in 1953 should have been considered in the computation and that the premiums collected by American Alliance were erroneously included. This constitutes the sole point in controversy.

The question for decision is posed by appellant as follows: "Did the Legislature (of Virginia) clearly intend that, where an insurance company *takes over the business* of another insurance company in the last minute of an expiring year, the continuing company must pay a license tax, for a license to begin May 1, thereafter, based on the amount of direct gross premiums written in the State by both companies during the preceding year ending December 31?" (Italics supplied)

It is insisted that while the point raised is a technical one, the legislative enactment did not specifically provide for the assessment to be made in the manner adopted and should not be extended by implication beyond the clear import of the language used in the statutes.

The Commonwealth contends that the question posed by appellant is based upon an erroneous premise in that appellant did not

*take over the business* of American Alliance but, as conceded by stipulation, the two companies merged.

It is plain from both the stipulation between the parties and the merger agreement that after the merger the companies continued to do business in Virginia under the Great American name. Neither company went out of business. When appellant applied for the 1954 license to do business in Virginia the application applied to appellant and all its constituent parts, including American Alliance.

The merger agreement provided: "Upon this agreement of merger becoming effective, all the rights, franchises and interests of the constituent corporations in and to every species of property, real, personal, and mixed, and things in action belonging to such constituent corporations, are and shall be deemed transferred to and vested in the surviving corporation, * * * and simultaneously therewith the surviving corporation does assume and shall be deemed to have assumed all of the liabilities of the constituent corporations * * *." Under this agreement the business of American Alliance was merged with that of appellant.

Section 58-486, Code of Virginia as amended (Acts 1952, ch. 190, p. 213; Acts 1954, ch. 207. p. 233), provides, *inter alia*: "Every insurance company as defined * * * shall pay an annual license tax, based upon the direct gross premium income as hereinafter defined *derived* from such business in this State during each year ending the thirty-first day of December prior to the year for which such license tax is to be paid, for the privilege of doing business in this State; * * *". (Italics supplied)

Section 58-490 of the Virginia Code as amended (Acts 1952, ch. 190, p. 213), provides: "For every year after the first year [not here involved] every such company * * * shall pay a license tax of two and three-fourths per centum of direct gross premium income *derived* from such business in this State during the preceding year ending the thirty-first day of December." (Italics supplied)

Appellant contends that the words "direct gross premium income" as used in both sections and applied here exclude the income from premiums collected by American Alliance, such premiums not being "direct gross premium income". This position is untenable. Both statutes include income *derived* from such business in this State during the preceding year, and the legal effect of the merger made the income of American Alliance "direct gross premium income" and it was therefore properly included.

 It has long been the law in this and other jurisdictions that the merger of two corporations does not end the existence of either. The existence of both continues under the merged status. *Adams* v. *U. S. Distributing Corp.*, 184 Va. 134, 34 S. E. (2d) 244, cert. den. 327 U. S. 788, 66 S. Ct. 807, 90 L. ed. 1014.

As was said in *Early* v. *Southgate Corp.*, 136 F. (2d) 217, 221: "* * * The court below was right in holding * * * that the changes that occurred in the merging of the corporations in 1934 were substantive and not of form only, and that the merging corporations became a single entity but without terminating the corporate existence of any of them." See also *American Gas & Elec. Co.* v. *Commissioner of Internal Revenue*, 85 F. (2d) 527 (C. C. A. 2d Cir. 1936); *In re New York Water Service Corp.*, 67 N. Y. S. (2d) 850.

 It is argued by appellant that by Acts, 1952, ch. 190, p. 213, the legislature changed the context of Code, § 58-490, when the term "direct gross premium income" was substituted for "the gross amount of all premiums, assessments, dues and fees collected, received or derived, or obligations taken therefor, from business in this State during each year ending the thirty-first day of December, except premiums received for reinsurance assumed * * *." When this change was made the term "direct gross premium income" was defined by the legislature as follows: "The words 'direct gross premium income' shall mean the gross amount of all premiums, assessments, dues, and fees collected, received or derived, or obligations taken therefor, from business in this State during each year ending the thirty-first day of December, excluding premiums received for reinsurance assumed * * *." (§ 58-486, Code, 1950, amended by Acts 1952, ch. 190, p. 213).* Premiums received for reinsurance are not here involved, and the statutory definition of "direct gross premium income" makes it plain that no material difference exists in the statute as rewritten.

 The Commonwealth argues that in thirty-one instances prior to the 1952 amendment the commission assessed license taxes against merged insurance companies in the same manner as it assessed the appellant in the instant case, and that in making the 1952 change in the statute the legislature had acquiesced in the administrative interpretation placed upon the statute. It is argued therefore that this administrative construction has become a part of the administrative

---

* By Acts, 1954, ch. 207, p. 233, this section was further amended but the change is not material here.

policy of the commission and should not be overthrown unless there is sound reason therefor.

While this position is sound, as we view the case, considering the legal effect of the merger, the merger agreement, and the applicable statutes involved, it is unnecessary to rely upon the administrative policy of the commission.

American Alliance did not go out of existence by virtue of the merger. The business continued in appellant's name.

We are of the opinion that the commission properly assessed appellant on the premiums collected by both companies in 1953.

For the reasons stated the order is

*Affirmed.*