# Richmond

METRO VAN & STORAGE CO., INC. V. COMMONWEALTH OF VIRGINIA.

January 16, 1976.

Record No. 750740.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Ransom W. Etheridge,* for appellant.

*Lewis S. Minter* (*Michael L. Rigsby,* on brief), for State Corporation Commission.

I'ANSON, C.J., delivered the opinion of the court.

The principal issue on this appeal is whether a corporation can retain its previously held certificate of public convenience and necessity after its merger with another Virginia corporation having identical authority under the Household Goods Carriers Act.

On November 17, 1973, Metro Van & Storage Co., Inc. (Metro), located in Norfolk, Virginia, and Monroe Transfer & Storage Co., Inc. (Monroe), located in Hampton, Virginia, merged pursuant to statute[1] with Monroe as the surviving corporation. Each corporation at that time held a certificate of public convenience and necessity authorizing transportation of household goods between all points in Virginia. After the merger, operations continued from Norfolk under Metro's certificate No. HG-312, and from Hampton under Monroe's certificate No. HG-260.

Subsequently, the Commission issued a rule against Metro to show cause why certificate No. HG-312 should not be revoked. After a hearing, the Commission revoked that certificate on the grounds that Metro had ceased its separate corporate existence and discontinued its service as a certificated household goods carrier, in violation of Rules 5 and 6 of the Commission's Rules and Regulations governing household goods carriers.

On appeal of right to this court, Metro contends that under our holdings in *Insurance Company* v. *Commonwealth*, 197 Va. 449, 452, 90 S.E.2d 108, 109-10 (1955), and *Adams* v. *U. S. Distributing Corp.*, 184 Va. 134, 150, 34 S.E.2d 244, 251, *cert. denied*, 327 U.S. 788 (1945), a merger of two Virginia corporations does not end the existence of either, but both continue to exist in the merged status.

Metro concedes that those cases were decided prior to the adoption of Title 13.1, Virginia's present corporation law, which became effective on January 1, 1957. It contends, however, that the present Code § 13.1-74(b) is a codification of the rule enunciated in *Adams*, *supra*, which interpreted former § 3823, Code of 1919, and in *Insurance Company*, *supra*, which construed former Code § 13-55, Code of 1950.

Code § 13.1-74, in pertinent part, reads:

"When such merger . . . becomes effective:

(a) The several corporations . . . shall be a single corporation, which . . . shall be that corporation designated in the plan of merger as the surviving corporation . . . .

(b) The separate existence of all corporation parties to the plan of merger . . . except the surviving . . . corporation . . . shall cease."

Metro argues that the word *separate* in the present Code § 13.1-74(b) indicates a legislative intent to continue the existence of all cor-

---

1. Code § 13.1-68, *et seq.*

porate parties to a merger "not separately, but under the merged status in the form of the designated surviving corporation", and therefore, both Metro and Monroe continue to function as two corporations. We do not agree.

In *Adams* we said that the effect of a merger upon a non-surviving corporation is to be determined by the terms and intent of the statutes involved. 184 Va. at 150, 34 S.E.2d at 251.

The provisions of § 13.1-74(b) do not appear in either of the prior statutes under which *Adams* and *Insurance Company* were decided. The language of subsection (b) is clear, and it unequivocally provides that the separate existence of the non-surviving corporation shall cease. Subsection (a) provides that after merger there shall be a *single surviving* corporation. Moreover, reference is made throughout § 13.1-74 to the *surviving* corporation. Thus, the language used evinces the legislative intent that the non-surviving member of a merged corporation ceases its legal existence and is not continued in its merged status for the purpose of exercising independent corporate activity.

We hold, therefore, that Metro, upon merger, ceased and terminated its existence as a separate legal entity capable of operating as a household goods carrier and retaining certificate No. HG-312.

Metro also contends that the Commission acted without authority in revoking its certificate. It claims that the Commission's power to revoke such certificates is granted only by Code § 56-338.12[2] which requires a finding of willful violation of pertinent statutes or Commission rules. Metro asserts that there was no showing of a willful violation of the Commission's Rules and Regulations and that therefore the revocation was improper. We reject this contention.

Rules 5 and 6 of the Commission provide, in pertinent part, as follows:

> "Rule 5. Discontinuance of service by a Household Goods carrier without notice to or approval by the Commission shall be deemed a forfeiture of all rights secured under and by virtue of the certificate issued by the Commission; . . .

> "Rule 6. No Household Goods carrier by motor vehicle shall abandon or discontinue, either temporarily (except in case of emergency) or permanently, any service established under the provi-

---

2. § 56-338.12 reads, in part: "[T]he Commission may . . . revoke . . . any . . . certificate, whenever the Commission finds . . . that such certificate holder . . . wilfully violated or failed to observe any of the proper orders, rules or regulations of the Commission, or any term, condition or limitation of such certificate."

sions of the motor vehicle law without permission of the Commission. . . ."

In view of our determination that Metro ceased to exist as a corporation, it necessarily follows that *Metro* ceased to furnish services as a household goods carrier. Failure to furnish such services without Commission approval amounted to "discontinuance of service" in violation of the Commission Rules and Regulations. We find this action willful within the meaning of Code § 56-338.12, since the merger was approved by both corporations through resolutions of their boards of directors. *See* Code § 13.1-68. Hence, we hold that the Commission had authority to revoke certificate No. HG-312.

■ Metro further asserts that cancellation or revocation of the certificate deprived it of its property without due process of law, since the certificate was a valuable asset and could be transferred.

While we agree that the certificate issued to Metro was a valuable asset and that it was transferable upon approval by the Commission, *Park Bros. Moving Corp.* v. *S&M Systems Corp.*, 216 Va. 322, 326, 218 S.E.2d 441, 444 (1975); Code § 56-338.14, we are not favorably impressed with Metro's argument. Since Metro ceased to exist as a corporation and willfully violated the Rules and Regulations of the Commission, revocation of the certificate was authorized. Therefore, Metro has not been deprived of an asset without due process of law.

For the reasons stated, the order of the Commission is

*Affirmed.*